Taylor et al v. Acxiom Corporation et al | Doc. 27 Att. 1
Case 2:07-cv-00001-TJW   Document 27   Filed 03/26/2007   Page 1 of 12
Case 2:07-cv-000..-TJW   Document 19   Filed 03/05/2007   Page 1 of 13

Case 9:03-cv-80490-KLR   Document 1   Entered on FLSD Docket 06/02/2003   Page 1 of 13

NIGHT BOX
FILED

MAY 3 0 2003

CLARENCE MADDOX
CLERK, USDC/SDFL/MIA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

RABBI JOEL LEVINE,

Plaintiff,

vs.

REED ELSEVIER, INC.,

Defendant.
_____/

Case Number 03-80490

CIV-HURLEY

MAGISTRATE JUDGE LYNCH

COMPLAINT—CLASS ACTION

## COMPLAINT

Plaintiff Rabbi Joel Levine sues Defendant Reed Elsevier, Inc. and alleges:

### GENERAL ALLEGATIONS

1. This is a class action pursuant to the Driver Privacy Protection Act, 18 U.S.C. §2721 *et seq.* (the "DPPA"). Plaintiff brings this action on his own behalf and behalf of all similarly situated individuals whose "personal information" is contained in any "motor vehicle record" maintained by the State of Florida, within the meaning of the DPPA, 18 U.S.C. §2725(1) and (3), who have not provided "express consent," within the meaning of the DPPA, 18 U.S.C. §2725(5) to the State of Florida for the distribution of their "personal information" for purposes not enumerated by the DPPA, 18 U.S.C. §2721(b), and whose "personal information" has been in fact knowingly "obtain[ed]" by the Defendant within the meaning of the DPPA, 18 U.S.C. §2724, for resale to customers of the Defendant.

2. Plaintiff is a resident of the Southern District of Florida. Plaintiff is the holder of Florida driver's license, which constitutes a "motor vehicle operator's permit," referenced in the

1

AFFIDAVIT
EXHIBIT 1

Dockets.Justia.com

DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Florida, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Florida driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

3. The Defendant, Reed Elsevier, Inc., a Massachusetts corporation ("REI"), is an American holding company for Reed Elsevier, PLC and Reed Elsevier, NV (British and Dutch corporations, respectively), which in turn conduct business through two jointly owned companies, Reed Elsevier Group, PLC and Elsevier Reed Finance, NV, (British and Dutch corporations, respectively). Reed Elsevier, PLC and Reed Elsevier, NV, Reed Elsevier Group, PLC and Elsevier Reed Finance, NV together own 100% of their American holding company, REI. REI conducts business throughout the United States, including the State of Florida and this District, under the trade name and trademark Lexis/Nexis. According to Securities & Exchange Commission filings by Reed Elsevier, PLC and Reed Elsevier, NV dated March 10, 2003, Lexis/Nexis is a division of REI.

4. Through Lexis/Nexis, REI provides its customers with a variety of data and information services, some of which allow the customers of Lexis/Nexis to obtain personal information concerning individuals throughout the State of Florida.

5. The DPPA was included as part of omnibus crime legislation passed by Congress in 1993, known as the Violent Crime Control and Law Enforcement Act of 1993. Senator Boxer, one of the DPPA's Sentate sponsors, described several well-publicized incidents in which

2

criminals had used publicly available motor vehicle records to identify and stalk their victims. Those incidents included:

- the murder of actress Rebecca Schaeffer in California by a man who had obtained Schaeffer's address from California's Department of Motor Vehicles;

- home invasion robberies by a gang of Iowa teenagers who identified their victims by copying the license numbers of expensive automobiles used those license numbers to obtain the addresses of the vehicle owners from the Iowa Department of Transportation; and

- the Arizona murder of a woman whose home address was identified from the Arizona Department of Motor Vehicles.

Senator Boxer also explained the ease with which a California stalker had obtained the addresses of young women by copying their license numbers and requesting their addresses from the California Department of Motor Vehicles.

6. As Senator Boxer explained, prior to the time of the passage of the DPPA, in "34 States, someone [could] walk into a State Motor Vehicle Department with your license plate number and a few dollars and walk out with your name and home address."

7. Representative Moran, who sponsored the DPPA in the House of Representatives, explained that "very few Americans realize that by registering their car or obtaining a driver's license through the DMV, they are surrendering their personal and private information to anyone who wants to obtain it. When informed that such information can be so easily obtained, most licensees are shocked and angry. According to a survey released by the National Association to Protect Individual Rights, 92 percent of Americans believe that the DMV should not sell or release personal data about them without their knowledge and approval."

8. As originally enacted in 1993, the DPPA made it unlawful for any person or organization to disclose or obtain personal information derived from any motor vehicle record,

3

unless the subject of the information had authorized such disclosure. As originally enacted, the DPPA recognized various exceptions, including use by any federal or state agency, use in connection with motor vehicle and driver safety, use in court proceedings, use in certain research activities, use relating to certain insurance matters, and use for verification of personal information submitted by the subject of such information. Use of personal information for marketing activities was permitted, so long as the States had provided individuals identified in motor vehicle records with the opportunity to prohibit such disclosures. This "opt out" provision effectively gave individuals the right to prohibit the States from disclosing personal information for marketing purposes. 18 U.S.C. §2721 (1993).

9. Congress significantly amended the DPPA in 1999 by eliminating the "opt out" provision for marketing activities. Use or obtaining of personal information contained in motor vehicle records is for "surveys, marketing or solicitations" is now permitted only "if the State has obtained the express consent of the person to whom such personal information pertains." Similarly, a requester of personal information may obtain such information for any purpose, "if the requester demonstrates it has obtained the express consent of the person to whom such personal information pertains." 18 U.S.C. §2721(b)(13), (14) (1999). By changing the "opt out" exceptions of the 1993 DPPA to "opt in" exceptions in the 1999 DPPA, Congress significantly reduced the categories of persons whose personal information may be lawfully obtained under the Act. *See Reno v. Condon*, 120 S.Ct. 666, 669 (2000) (upholding the constitutionality of the DPPA) (States may no longer "imply consent from a driver's failure to take advantage of a state-afforded opportunity to block disclosure, but must rather obtain a driver's affirmative consent to disclose the driver's personal information" for restricted purposes.). The effective date of the 1999 amendments to the DPPA was June 1, 2000.

4

10. Resale of personal information contained in a motor vehicle record by an "authorized recipient" under the DPPA is authorized under certain circumstances. It is unlawful under the DPPA, however, to obtain personal information contained in a motor vehicle record for the purpose of reselling such personal information, even if the resale is intended for a purpose otherwise authorized under the DPPA. *Locate.Plus.Com, Inc. v. Iowa Department of Transportation*, 650 N.S. 609 (Iowa 2002). As the Iowa Supreme Court has explained, "The language of the DPPA as a whole makes it plain that Congress . . . sought to limit access to personal information in state vehicle records by both protecting citizens from the improper use of such information, while allowing access for legitimate purposes or uses. At the same time, it imposed a gatekeeping function on the state departments of motor vehicles to exercise discretion to disclose personal information when used for the purposes [authorized by the Act]. . . . [The] approach taken by Congress to the dissemination of personal information in motor vehicle records contemplates that the person or entity requesting disclosure of the personal information also be the person or entity that will use the information for the statutory purpose. Thus, nonconsensual disclosure of information is permitted only for approved uses, and disclosure is not permitted if the requester is not seeking to use the information for a statutory purpose. The statute does not permit disclosure to a nonuser, who only seeks information to redisclose it for use under a permitted purpose. . . . Clearly, any other interpretation would render the statute impractical, and essentially render the state incapable of performing its gatekeeping function under the statute. The important task of protecting individual privacy interests recognized by Congress would be undermined by permitting a requester to determine the eligibility to receive the information." *Id.* at 616-18.

11. Thus, it is unlawful to "obtain ... personal information" about another from a "motor vehicle record" for purposes of reselling such information, even if the party engaged in the resale of such information intends that it be resold only for a purpose permitted under the DPPA. *Id.* at 618.

12. Florida law does not conform to the requirements of the 1999 amendments to the DPPA. Contrary to the DPPA's requirements that drivers "opt in" before the State can disclose their personal information for marketing or solicitation, Florida still permits disclosure of personal information unless drivers formally request that the State's Department of Highway Safety and Motor Vehicles ("DHSMV") refrain from doing so. Florida Statutes §119.07(3)(aa)(12). Moreover, current Florida law, in direct violation of the DPPA, purports to authorize the sale of personal information from motor vehicle records for the purposes of resale to businesses "whose primary business interest is to resell or redisclose the personal information to persons who are authorized to receive such information." Florida Statutes §119.07(3)(aa). The DPPA, however, prohibits resale of personal information by persons not originally authorized to receive the personal information under the DPPA (*i.e.*, for a purpose authorized by the DPPA).

13. Under the DPPA, a "person" who knowingly obtains or discloses "personal information" concerning another from a "motor vehicle record . . . shall be liable to the individual to whom the information pertains." 18 U.S.C. §2724(b). The DPPA provides for liquidated damages in the amount of $2,500.00 for violations of the DPPA, in addition to punitive damages upon a showing of a willful or reckless disregard of the law, reasonable attorney's fees and costs and other relief, including preliminary and equitable relief. 18 U.S.C. §2724(b). A "person" under the DPPA is defined as "an individual, organization or entity, but

does not include a State or agency thereof." 18 U.S.C. §2721(2). In other words, any party aggrieved by violations of the DPPA may not sue the State of Florida or the DHSMV for such violations. Enforcement of the DPPA against the States is limited to action by the Attorney General of the United States, who is authorized to impose a $5,000 per day penalty against any State department of motor vehicles that has a policy or practice of "substantial noncompliance" with the DPPA. 18 U.S.C. §2723(b). As of this time, the Attorney General has not taken any action to remedy the Florida DHSMV's substantial noncompliance with the DPPA.

14. Part the business of REI, through Lexis/Nexis, is to provide the customers of Lexis/Nexis with information that it obtains from a variety of sources, including the Florida DHSMV.

15. For the last several years, including the years following the effective date of the 1999 amendment to the DPPA (June 1, 2000), REI, through Lexis/Nexis has obtained "personal information" from the Florida "motor vehicle records" of millions of individuals within the meaning of the DPPA, 18 U.S.C. §2725(3) and (1) respectively, for the purpose of reselling such information to customers of Lexis/Nexis, in violation of the DPPA.

16. Through Lexis/Nexis, REI's violations of the DPPA have been committed "knowingly," within the meaning of the DPPA 18 U.S.C. §2724(b). In the context of the DPPA, to act knowingly is to act with knowledge of the facts that constitute the offense. *See, e.g., Bryan v. United States*, 524 U.S. 184, 193, 118 S.Ct. 1939, 1946 (1998) ("[U]nless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense."). Thruogh Lexis/Nexis, REI has had—and continues to have—knowledge that it is obtaining personal information pertaining to millions of individuals from Florida motor vehicle records.

7

17. According to the Florida DHSMV, the "Personal information" obtained by Lexis/Nexis (on behalf of REI) Florida "motor vehicle records" includes the following:

- On a weekly basis, Lexis/Nexis obtains Florida driver license information from the DHSMV's Division of Driver Licenses concerning millions of individuals who hold a Florida driver's license. These records include the name, address, race, date of birth, sex and social security numbers of Florida's licensed drivers.

18. The names, addresses, date of birth, sex, race and social security numbers contained in these "motor vehicle records" are "personal information," within the meaning of the DPPA, 18 U.S.C. §2725(1), (3). Through Lexis/Nexis, REI's obtaining of such information for the purpose of data collection and potential resale to customers of Lexis/Nexis is unauthorized by the DPPA and unlawful. Each time that REI knowingly obtains this personal information from motor vehicle records through Lexis/Nexis, it has commits a separate and distinct violation of the DPPA, which is remediable under the DPPA, 18 U.S.C. §2724.

## CLASS ACTION ALLEGATIONS

19. Pursuant to Fed. R. Civ. P. 23(b)(3) and Local Rule 23.1(2), Plaintiff brings this action on behalf of himself, and all others similarly situated, as a representative of the following class (the "Class"):

> Each and every individual in the State of Florida whose name, address, race, date of birth, sex and/or social security number are contained in driver's license or motor vehicle registration records obtained by Lexis/Nexis from the State of Florida's Department of Highway Safety and Motor Vehicles, without the express consent of such individuals, from June 1, 2000 through the date of judgment herein.

Excluded from the class are persons who have expressly authorized the State of Florida's DHSMV to provide third parties with their "personal information" for any purpose.

20. The applicable requirements of Fed. R. Civ. P. 23 are met in this case. The Class as defined is so numerous that joinder of all members is impracticable. According to information

8

obtained from Florida's DHSMV, there are more than 15,000,000 registered vehicles in the State of Florida. There are more than 13,000,000 licensed drivers in the State of Florida.

21. There are questions of fact and law common to the Class as defined, which common questions predominate over any questions affecting only individual members. The common questions include:

- whether REI, through Lexis/Nexis has obtained "personal information" from the "motor vehicle records" of members of the Class, within the meaning of the DPPA, 18 U.S.C. §2725(3), (1);

- whether the obtaining of "personal information" from a "motor vehicle record" for purposes of storage and later resale violates the DPPA;

- whether the obtaining of "personal information" from a "motor vehicle record" for purposes of storage and later resale falls within one of the exceptions of the DPPA, when the party to whom the information is resold intends a use of the information that is one of the authorized purposes of the DPPA; and

- whether REI's obtaining of "personal information" from the "motor vehicle records" of members of the Class, through Lexis/Nexis was done knowingly, within the meaning of the DPPA, 18 U.S.C. §2724(a).

22. Plaintiff can and will fairly and adequately represent and protect the interests of the Class as defined and has no interests that conflict with the interests of the Class. This is so because:

- all of the questions of law and fact regarding the liability of REI are common to the class and predominate over any individual issues that may exist, such that by prevailing on his own claim, Plaintiff will necessarily establish the liability of REI to all class members;

- without the representation provided by Plaintiff, it is unlikely that any class members would receive legal representation to obtain the remedies specified by the DPPA;

- a remedy available under the DPPA is the liquidated sum of $2,500, which Plaintiff intends to seek for all members of the Class; and

9

    o    Plaintiff has retained competent attorneys who are experienced in the conduct of class actions. Plaintiff and Plaintiff's counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibility to the class members and are determined to diligently discharge those duties to obtain the best possible recovery for the Class.

23. All class members have the same legal rights under the DPPA. Through Lexis/Nexis, REI's violations of the DPPA have affected millions of Florida licensed drivers and registered motor vehicle owners in a similar way. The class action is superior to any other method for remedying REI's violations of the DPPA, through Lexis/Nexis, given that common questions of fact and law predominate and the liquidated damage provisions of the DPPA make the remedy available to class members identical. Class treatment is likewise indicated to ensure optimal compensation for the Class and limiting the expense and judicial resources associated with millions of potential claims.

## JURISDICTION AND VENUE

24. This action arises under a federal statute and this Court has jurisdiction pursuant to 18 U.S.C. §2724(a) (conferring jurisdiction on the United States District Courts for actions under the DPPA) and 28 U.S.C. §1331 (federal question jurisdiction).

25. Venue is appropriate in this District because the Plaintiff is a resident of this District and, through Lexis/Nexis, REI conducts business throughout the State of Florida and this District.

## CLAIMS FOR RELIEF

26. Plaintiff realleges ¶¶1-25 of this Complaint.

27. Through Lexis/Nexis, REI has knowingly obtained "personal information" pertaining to Plaintiff and the members of the Class from "motor vehicle records" maintained by the State

10

Case 2:07-cv-00001-TJW    Document 27    Filed 03/26/2007    Page 11 of 12
Case 2:07-cv-0000 ,-TJW    Document 19    Filed 03/05/2007    Page 11 of 13
Case 9:03-cv-80490-KLR    Document 1    Entered on FLSD Docket 06/02/2003    Page 11 of 13

of Florida DHSMV, in violation of the DPPA. 18 U.S.C. §2721 *et seq.* Through Lexis/Nexis, REI's obtaining of this "personal information" was not for a purpose authorized by the DPPA.

28. Pursuant to the DPPA, 18 U.S.C. §2724(a), REI is liable for knowingly obtaining "personal information" pertaining to Plaintiff and the members of the Class, through Lexis/Nexis, from "motor vehicle records," in violation of the DPPA.

29. Plaintiff and the members of the Class are entitled to liquidated damages in the amount of $2,500.00 for each instance in which REI, through Lexis/Nexis, has violated the DPPA.

WHEREFORE, Plaintiff demands judgment on his behalf and on behalf of the other members of the Class to the following effect:

- declaring that this action may be maintained as a class action;

- granting judgment in favor of Plaintiff and the other members of the Class against Defendant REI in the amount of $2,500.00 for each instance in which REI, through Lexis/Nexis, has obtained personal information concerning the Plaintiff and members of the Class;

- punitive damages should the Court find that, through Lexis/Nexis, REI, has acted in willful or reckless disregard of the DPPA;

- attorney's fees;

- costs incurred; and

- such other relief as the Court deems appropriate.

Case 2:07-cv-00001-TJW   Document 27   Filed 03/26/2007   Page 12 of 12
Case 2:07-cv-00001-TJW   Document 19   Filed 03/05/2007   Page 12 of 13
Case 9:03-cv-80490-KLR   Document 1   Entered on FLSD Docket 06/02/2003   Page 12 of 13

## JURY DEMAND

Plaintiff demands a jury trial as to all issues so triable.

Dated this 30th day of May, 2003.

DAVID J. SALES
Florida Bar No. 794732
Searcy Denney Scarola
Barnhart & Shipley
2139 Palm Beach Lakes Blvd.
P. O. Drawer 3626
West Palm Beach, FL 33402
561-686-6300

JAMES K. GREEN
Florida Bar No. 229466
Law Office of James K. Green
Esperante—Suite 1630
222 Lakeview Avenue
West Palm Beach, FL 33401
561-659-2029