Taylor et al v. Acxiom Corporation et al    Case 2:07-cv-00001-TJW    Document 27    Filed 03/26/2007    Page 1 of 34    Doc. 27 Att. 4

Case 0:03-cv-61063-JEM    Document 417-1    Entered on FLSD Docket 01/04/2007    Page 1 of 14

**CHRISTIAN D. POSADA, P.A.**
Christian Posada, Esq.
Florida Bar No. 0484792
1361 S. Federal Highway, Suite 116
Boca Raton, Florida 33432
(561) 251-4993
(561) 561-1224 (facsimile)

**ATTORNEY FOR INTERVENORS**

**THE COREA FIRM, P.L.L.C.**
Thomas M. Corea
Texas Bar No. 24037906
Jeremy R. Wilson
Texas Bar No. 24037722
The Republic Center
325 North St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone:  (214)953-3900
Facsimile:   (214)953-3901

**OTSTOTT & JAMISON, P.C.**
George A. Otstott
Texas Bar No. 15342000
Ann Jamison
Texas Bar No. 00798278
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:  (214)522-9999
Facsimile:   (214)828-4388

**TEXAS COUNSEL FOR INTERVENORS**
**(Motion to Appear *Pro Hac Vice* pending)**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

RICHARD FRESCO, CARLOS BARRETT,
JEFFREY HY, MARY ANN COLLIER, ROY
McGOLDRICK, ROBERT PINO, KENNETH HERE
TICK, RUSSELL V. ROSEN and JOEL LEVINE,
     Plaintiffs,

v.

AUTOMOTIVE DIRECTIONS, INC., a Wisconsin
Corporation; EXPERIAN INFORMATION
SOLUTIONS, INC., an Ohio Corporation; R. L. POLK
& CO., a Delaware Corporation; CHOICEPOINT
PUBLIC RECORDS, INC., a Georgia Corporation;
CHOICEPOINT, INC., a Georgia Corporation;
CHOICEPOINT SERVICES, INC., a Georgia
Corporation; CHOICEPOINT PRECISION
MARKETING INC., a Georgia Corporation; KNOWX
LLC, a Georgia Limited Liability Company; SEISINT,
INC., a Florida Corporation; REED ELSEVIER, INC.,
a Massachusetts Corporation; ACXIOM
CORPORATION, a Delaware Corporation; and
eFUNDS CORPORATION, a Delaware Corporation,
    Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§

CASE NO. 03-cv-61063-JEM

**INTERVENORS' OBJECTION TO
CLASS CERTIFICATION AND
SETTLEMENT AGREEMENT**

AFFIDAVIT
EXHIBIT 4

## INTERVENORS' OBJECTION TO
## CLASS CERTIFICATION AND SETTLEMENT AGREEMENT

Intervenors SHARON TAYLOR, JAMES DOUGLAS BOOKER, LOWRY BRILEY, TWILAH BROWN, JAMES D. CLARY, SHARON A. CLARY, ALICE M. COOKS, ARLANDO COOKS, ELIZABETH DeWITT, KENNETH GOSSIP, SR., KENNICE GOSSIP, PAMELA HENSLEY, ROBERT G. HOLLINESS, CAROLYN LATHAM HOLUB, BRANDI JEWELL, TRACY KARP, DAVID PATTERSON, RONNIE PHILLIPS, JAMES ROBERTS, LUZ ANN ROBERTS, KIMBERLY DAWN UNDERWOOD, MARILYN WHITAKER, and WILLIAM "TROY" WILSON, file their Objection to Class Certification and Settlement Agreement, and in support thereof, state:

### I.

### PRELIMINARY STATEMENT

This lawsuit ("the Florida Litigation"), until now, involved a relatively simple issue: whether Defendants, by obtaining personal information from Florida drivers' license records, violated the Driver's Privacy Protection Act[1] ("DPPA"), a federal statute which provides for civil liability. Plaintiffs allege that Defendants violated this statute because they obtained personal information from the State of Florida during a time when Florida was not in compliance with the DPPA and did not obtain drivers' express consent to sell their personal information.

The focus of the Florida Litigation has always been on actions taken in Florida. All of the named Plaintiffs are from Florida, and the Original Complaint only involves actions taken in the State of Florida. Now, in order to settle this lawsuit, Defendants have insisted that they be absolved of liability for any DPPA violations for which they may be responsible in other states.

---

[1] 18 U.S.C. § 2721 *et. seq.*

Thus, Defendants and Plaintiffs seek to certify a national putative class from which Intervenors, all Texas residents, cannot opt-out.

Intervenors contend that it is inappropriate for this Court to certify the proposed national class due to the significantly different facts constituting DPPA violations in each state.

## II.

## PROCEDURAL HISTORY

This lawsuit involves a number of consolidated actions, all filed in Florida, by Florida residents, alleging violations of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et. seq.* ("DPPA"). Proposed class representatives recently entered into a settlement agreement with a number of the Defendants in this case providing for injunctive relief, class representative incentive awards, and attorneys' fees. Hoping to insulate itself from any unidentified liability for violating the DPPA in any other states, the settling Defendants insisted that the settlement agreement be conditioned on the certification of a national putative class under F.R.C.P. 23(b)(2). Thus, Plaintiffs filed a Second Amended Complaint seeking certification of a class consisting of all persons nationally whose personal information was obtained by Defendants from a motor vehicle record – some 200 million people.

Intervenors recently filed a Complaint in the United States District Court for the Eastern District of Texas.[2] That case is styled *Taylor, et al. v. Acxiom, et al.*, Case No. 2:07cv01 ("the Texas Litigation"). The Texas Litigation involves several of the settling Defendants in the Florida Litigation, but significantly different claims. Significantly, Intervenors have alleged in the Texas Litigation that Defendants willfully violated the DPPA entitling them to punitive damages. Intervenors support this argument by presenting signed contracts between Defendants

---

[2] *See* Complaint (attached hereto as Exhibit 1). The attached Complaint was filed with the Eastern District of Texas electronically on January 3, 2007.

and the State of Texas in which they acknowledge that Texas has not obtained express consent from individuals to sell their personal information and in which Defendants agree to indemnify the State of Texas for any violations of the DPPA that might result. It does not appear that the issue of violations in Texas has ever been addressed or explored in the Florida Litigation.

## III.

## ARGUMENTS AND AUTHORITIES

Intervenors assert that DPPA violations in various states should not be treated as a national class action because of the varying degrees of culpability involved in how Defendants obtained personal information from the various state governments. A brief overview of the DPPA and its subsequent amendments illustrates the various causes of actions asserted by the two lawsuits at issue.

### A.    The DPPA

The DPPA was part of crime fighting legislation enacted in response to the murder of a young woman in Los Angeles, California, in 1989. Rebecca Schaeffer was an actress who starred on the television show *My Sister Sam* in the late 1980's. One of Ms. Schaeffer's "fans" retained a private investigator who recorded Ms. Schaeffer's license plate number. The investigator then went to the California State Department of Motor Vehicles where, for a nominal fee, he obtained Ms. Schaeffer's home address. Armed with Ms. Schaeffer's home address, the assailant went to her home and murdered her.

In 1994, Congress enacted the Violent Crime Control and Law Enforcement Act of 1994, of which the DPPA was a part. Through the DPPA, Congress intended to prevent stalkers, harassers, would-be criminals, and other unauthorized individuals from obtaining and using personal information from state motor vehicle records. The act included a number of exceptions

and created civil liability for any person or entity who obtained or used "personal information" as that term is used by the act.

Under the 1994 version of the DPPA, the release of personal information to direct marketers was subject to an "opt-out" requirement. In other words, an entity could obtain "personal information" from a state motor vehicle record for essentially any purpose as long as the individual whose information was obtained had not "opted out" by signing a document requesting that the state not sell his information.

However, in 1999, Congress amended the DPPA to require states to have an "opt-in" policy to prohibit direct marketers from obtaining an individual's personal information from states' departments of motor vehicles without the individual's express consent. The effective date of this amendment was June 1, 2000. As a result of this amendment, a state's department of motor vehicles cannot disclose an individual's driver's license information without express permission from the individual about whom the information pertains.

### 1.  Florida's reaction to the 1999 amendment.

For unknown reasons, the State of Florida waited almost four years, until May 13, 2004, to amend its public records statute to comply with the DPPA.[3] Consequently, third parties, including Defendants, accessed, and continue to unlawfully access, Plaintiffs' and the Class Members' personal information (obtained between 2000 and 2004) in direct violation of the DPPA. This failure on the part of the State of Florida to safeguard drivers' license records is the heart of the Florida Litigation and the focus of Defendants' liability. Defendants in the Florida Litigation claim they believed that the State of Florida was in compliance with the DPPA and that, as a result, they are at most guilty of "technical violations."

---

[3] *See* FLA. STAT. § 119.07(3)(aa)(12); 2004 Fla. Sess. Law Serv. 2004-62 (West).

## 2.    Texas reaction to the 1999 amendment.

Contrary to the DPPA's requirements that drivers "opt in" before the State can disclose their personal information for marketing or solicitation, the State of Texas chose not to implement such a procedure.  Thus, Texas also does not obtain express consent from any driver for the release of their personal information.  Unlike Florida, however, the State of Texas only sells "personal information" from a motor vehicle record to "persons" who certify that they have a lawful purpose for the information and/or have obtained the specific written consent of the Texas driver or identification card holder for the release of their information.  Once a "person," as that term is defined by the DPPA, certifies to the State of Texas that they have a lawful purpose for some personal information and/or have obtained any requisite consent (and agrees to indemnify the State of Texas for any damages that State might incur by this procedure), the State of Texas, through its Department of Public Safety, provides that person with a copy of the State's entire database of names, addresses, and other personal information – some twenty (20) million plus residents of the State of Texas.[4]

Each Defendant in the Texas Litigation (and several Defendants in the Florida Litigation) purchased this entire database of names from the Texas Department of Public Safety. Defendants each have a signed contract with the State of Texas whereby they certify to the State of Texas that they have a proper purpose for obtaining each piece of personal information and/or have obtained requisite written consents.[5]  Significantly, these contracts also inform Defendants that the State of Texas has not obtained express consent for distribution for the names and requires Defendants to indemnify the State of Texas for any liability it might incur for Defendants wrongfully obtaining the personal information contained in the database.

---

[4] *See* Exhibit 1.
[5] *See* Exhibit 1.

**INTERVENORS' OBJECTION TO CLASS**
**CERTIFICATION AND SETTLEMENT AGREEMENT**                                    Page 6

Although Defendants may have a permissible use under the DPPA for obtaining "personal information" for some of the people in the database, they do not have a permissible purpose to obtain all twenty million names in Texas' database. Thus it is alleged that the Defendants in the Texas Litigation have knowingly violated the act. For this reason, Intervenors assert that the violations involved in the Texas Litigation are significantly more severe than those involved in the Florida Litigation and certification of a national class is inappropriate.

**B.    The Proposed Class Does Not Meet the Requirements of F.R.C.P. 23(a).**

Intervenors assert that certification of national putative class is inappropriate primarily because such a class does not meet the requirements of Rule 23(a).

Rule 23(a) provides for certification of a class only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Thus, the four prerequisites of Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. The numerosity requirement examines whether the class is so large that joinder of all members would be impracticable.[6] The requirements of commonality, typicality, and adequate representation overlap and tend to merge.[7] Generally, typicality and commonality examine "whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification."[8] "Adequacy of representation" means that the class representative has common interests with

---

[6] Fed.R.Civ.P. 23(a)(1).

[7] *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 626 n. 20 (1997).

[8] *Piazza v. Ebsco Indus., Inc.,* 273 F.3d 1341, 1346 (11th Cir.2001).

unnamed class members and will vigorously prosecute the interests of the class through qualified counsel.[9]

Although the proposed class clearly meets the numerosity requirement, it is clear that none of the other tests are satisfied. Because commonality and typicality tend to blend together, this Objection will discuss them simultaneously. Proponents of the requested class certification rely a great deal on the difficulties of obtaining monetary relief in support of their Motion.[10] Specifically, Defendants place great emphasis on their defense that they did not "knowingly" obtain information in violation of the act.[11] Defendants also argue that they cannot be liable under the DPPA because they did not know that Florida had failed to implement the requisite "opt-in" procedures necessary under the amended DPPA.[12] Each of these arguments, assert the proponents of the class, warrant class certification and approval of the Settlement Agreement because, according to proponents of the settlement, the Court may refuse to award damages to the class.[13] According to the parties, since damages are unlikely to be awarded, a class action seeking only injunctive relief should be approved.

Although Intervenors disagree about the Court's discretion in awarding damages after the *Kehoe*[14] decision, none of the above arguments regarding damages are factors in the Texas Litigation. In the Texas Litigation, Defendants knew, because it was stated in their contract with the State of Texas, that the State had not implemented an "opt-in" procedure in compliance with amended DPPA. Also, in the Texas Litigation, Defendants knew that they were obtaining the State's entire database containing personal information on over twenty million individuals.

---

[9] *See id.*
[10] *See* Memorandum in Support of Motion for Preliminary Approval of Proposed Settlement at 23.
[11] *See id* at 23 ("As Justice Scalia acknowledged in *Kehoe*, this scienter question is an important and undecided issue of law under the DPPA.")
[12] *See id* at 24.
[13] *See id.*
[14] *Kehoe v. Fidelity Federal Bank & Trust,* 421 F.3d 1209 (11th Cir. 2005)

**INTERVENORS' OBJECTION TO CLASS**
**CERTIFICATION AND SETTLEMENT AGREEMENT**                                    Page 8

Defendants also knew they did not have a permissible purpose for all twenty million pieces of information. It is alleged that Defendants intentionally chose to ignore the provisions of the DPPA because it was less expensive to obtain the entire database rather than obtain information on an individual basis. This choice is not only a factor in whether the Court should award liquidated damages, but will likely expose Defendants to punitive damages.

Thus, while the Florida Litigation may be dealing with "technical" violations of the DPPA, the Texas Litigation deals with allegedly knowing, willful violations of the DPPA. For this reason, the named Plaintiffs are simply not typical of the plaintiffs of a nation-wide class. Presumably, alleged violations of the DPPA in other states will involve other types of violations as well. In short, the type of violation drives the culpability of Defendants and determines what types of remedies are available. Class counsel and the proposed named Plaintiffs determining that injunctive relief is the appropriate remedy in Florida does not mean that it is appropriate for a national putative class.

This naturally led to questions of whether the proposed class representatives are adequately addressing the concerns of the proposed national class as a whole. The allegations in the Texas Litigation have not been fully explored. It is clear from the proposed settlement agreement that it is based entirely on class counsel's understanding of the violations in Florida. The motions and briefs on file with the Court focus exclusively on Defendants' actions in Florida. The entire rest of the nation appears to be an afterthought. Under these circumstances, Intervenors assert that the proposed class representatives have not and are not adequately representing the interests of a national putative class. For this reason, certification of national class should be denied.

## IV.

## <u>CONCLUSION</u>

The claims involved in the Texas Litigation are significantly different than the claims involved in the Florida Litigation. The claims in the Texas Litigation have not been explored or addressed in the Florida Litigation, yet a proposed settlement has already been reached. All of the named Plaintiffs in the Florida Litigation are Florida residents and their claims are not typical of those of the entire class and they are not adequate representatives of a national putative class. For these reasons, Intervenors respectfully request that this Court refuse to certify a national putative class in this lawsuit.

Respectfully submitted,

**CHRISTIAN D. POSADA, P.A.**

Christian Posada, Esq.
Florida Bar No. 0484792
1361 S. Federal Highway, Suite 116
Boca Raton, Florida 33432
(561) 251-4993
(561) 561-1224 (facsimile)

**ATTORNEY FOR INTERVENORS**

**THE COREA FIRM, P.L.L.C.**

Thomas M. Corea
Texas Bar No. 24037906
Jeremy R. Wilson
Texas Bar No. 24037722
The Republic Center
325 North St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone:    (214)953-3900
Facsimile:    (214)953-3901

**OTSTOTT & JAMISON, P.C.**
George A. Otstott
Texas Bar No. 15342000
Ann Jamison
Texas Bar No. 00798278
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:    (214)522-9999
Facsimile:    (214)828-4388

**TEXAS COUNSEL FOR INTERVENORS**
**(Motion to Appear *Pro Hac Vice* pending)**

### CERTIFICATE OF SERVICE

I certify that on January 4, 2007, I electronically filed the above Motion with the Clerk of

the Court using CM/ECF.  I also certify that the foregoing document is being served this day on

all counsel of record identified on the attached Service List in the manner specified, either via

transmission of Notices of Electronic Filing generated by CM/ECF or by U. S. mail for those

counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____

Christian D. Posada

## CERTIFICATE OF CONFERENCE

I certify that Intervenors have conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and have been unable to do so.

_____

Christian D. Posada

## SERVICE LIST

Scott J. Frank
Lauren D. Levy
Butler Pappas Weihmuller Katz Craig
80 SW 8th Street, Suite 3300
Miami, Florida 33130
      R. L. Polk & Co.

Lewis F. Collins, Jr.
Butler Pappas Weihmuller Katz Craig
Bayport Plaza, Suite 1100
6200 Courtney Campbell Causeway
Tampa, Florida 33607
      R. L. Polk & Co.

Juan C. Enjamio
Hunton & Williams
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
      Acxiom Corporation

**THE COREA FIRM, P.L.L.C.**
Thomas M. Corea
Texas Bar No. 24037906
Jeremy R. Wilson
Texas Bar No. 24037722
The Republic Center
325 North St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone:   (214)953-3900
Facsimile:   (214)953-3901

**OTSTOTT & JAMISON, P.C.**
George A. Otstott
Texas Bar No. 15342000
Ann Jamison
Texas Bar No. 00798278
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:   (214)522-9999
Facsimile:   (214)828-4388

**ATTORNEYS FOR PLAINTIFFS**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SHARON TAYLOR, JAMES DOUGLAS BOOKER, LOWRY BRILEY, TWILAH BROWN, JAMES D. CLARY, SHARON A. CLARY, ALICE M. COOKS, ARLANDO COOKS, ELIZABETH DeWITT, KENNETH GOSSIP, SR., KENNICE GOSSIP, PAMELA HENSLEY, ROBERT G. HOLLINESS, CAROLYN LATHAM HOLUB, BRANDI JEWELL, TRACY KARP, DAVID PATTERSON, RONNIE PHILLIPS, JAMES ROBERTS, LUZ ANN ROBERTS, KIMBERLY DAWN UNDERWOOD, MARILYN WHITAKER, and WILLIAM "TROY" WILSON, on behalf of themselves and all others similarly situated, Plaintiffs, | § § § § § § § § § § § § § § § § | |
| | § | CAUSE NO. 2:07cv01 |
| | § | JUDGE:  T. JOHN WARD |
| v. | § § | COMPLAINT – CLASS ACTION JURY TRIAL DEMAND |
| ACXIOM CORPORATION, a Delaware Corporation; CHOICEPOINT PUBLIC RECORDS DATABASE TECHNOLOGIES, INC. a Georgia Corporation; CHOICEPOINT PUBLIC RECORDS, INC. a Georgia Corporation; CHOICEPOINT, INC. a Georgia Corporation; CHOICEPOINT SERVICES, INC., a Georgia Corporation; SEISINT, INC., a Florida Corporation; and LEXISNEXIS, REED ELSEVIER, INC., a Massachusetts Corporation, Defendants. | § § § § § § § § § § § § | |

## COMPLAINT – CLASS ACTION

Plaintiffs, SHARON TAYLOR, JAMES DOUGLAS BOOKER, LOWRY BRILEY, TWILAH BROWN, JAMES D. CLARY, SHARON A. CLARY, ALICE M. COOKS, ARLANDO COOKS, ELIZABETH DeWITT, KENNETH GOSSIP, SR., KENNICE GOSSIP, PAMELA HENSLEY, ROBERT G. HOLLINESS, CAROLYN LATHAM HOLUB, BRANDI JEWELL, TRACY KARP, DAVID PATTERSON, RONNIE PHILLIPS, JAMES ROBERTS, LUZ ANN ROBERTS, KIMBERLY DAWN UNDERWOOD, MARILYN WHITAKER, and WILLIAM "TROY" WILSON, on behalf of themselves and all others similarly situated, sue Defendants, ACXIOM CORPORATION ("Acxiom), CHOICEPOINT PUBLIC RECORDS DATABASE TECHNOLOGIES, INC. ("ChoicePoint PRDC"); CHOICEPOINT PUBLIC RECORDS, INC. ("ChoicePoint Public Records"); CHOICEPOINT, INC. ("ChoicePoint"); CHOICEPOINT SERVICES, INC. ("ChoicePoint Services") SEISINT, INC. ("Seisint"); and LEXISNEXIS, REED ELSEVIER, INC. ("Elsevier"), and states:

1.      This is a class action pursuant to the Driver Privacy Protection Act, 18 U.S.C. §2721 et seq. (the "DPPA"). Plaintiffs bring this action on their own behalf and on behalf of all similarly situated individuals whose "personal information" is contained in any "motor vehicle record" maintained by the State of Texas, within the meaning of the DPPA, 18 U.S.C. §2725(1) and (3), who have not provided "express consent," within the meaning of the DPPA, 18 U.S.C. §2725(5) to the State of Texas for the distribution of their "personal information" for purposes not enumerated by the DPPA, 18 U.S.C. §2721(b), and whose "personal information" has been knowingly "obtain[ed]" and used by the Defendants within the meaning of the DPPA, 18 U.S.C. §2724.

# I.

## PARTIES

2.     Plaintiff SHARON TAYLOR is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

3.     Plaintiff JAMES DOUGLAS BOOKER is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

4.     Plaintiff LOWRY BRILEY is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all

contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C.

§2725(3). These records disclose, among other things, Plaintiff's name, address and race.

5.       Plaintiff TWILAH BROWN is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

6.       Plaintiff JAMES D. CLARY is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

7.       Plaintiff SHARON A. CLARY is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the

DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

8.    Plaintiff ALICE M. COOKS is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

9.    Plaintiff ARLANDO COOKS is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

10.    Plaintiff ELIZABETH DeWITT is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the

DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

11.    Plaintiff KENNETH GOSSIP, SR. is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

12.    Plaintiff KENNICE GOSSIP is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

13.    Plaintiff PAMELA HENSLEY is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the

DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

14.     Plaintiff ROBERT G. HOLLINESS is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

15.     Plaintiff CAROLYN LATHAM HOLUB is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

16.     Plaintiff BRANDI JEWELL is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all

contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C.

§2725(3). These records disclose, among other things, Plaintiff's name, address and race.

17.    Plaintiff TRACY KARP is a resident of Texas and holder of a Texas driver's

license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18

U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there

is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C.

§2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all

contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C.

§2725(3). These records disclose, among other things, Plaintiff's name, address and race

18.    Plaintiff DAVID PATTERSON is a resident of Texas and holder of a Texas

driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA,

18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which

there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18

U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle

registration all contain "personal information" concerning Plaintiff, within the meaning of the

DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name,

address and race.

19.    Plaintiff RONNIE PHILLIPS is a resident of Texas and holder of a Texas driver's

license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18

U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there

is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C.

§2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all

contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

20.    Plaintiff JAMES ROBERTS is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

21.    Plaintiff LUZ ANN ROBERTS is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

22.    Plaintiff KIMBERLY DAWN UNDERWOOD is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning

of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

23.     Plaintiff MARILYN WHITAKER is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

24.     Plaintiff WILLIAM "TROY" WILSON is a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race.

25.     Defendant ACXIOM CORPORATION is a Delaware corporation with its principal place of business in Little Rock, Arkansas, and which, at all times material to this action, has been doing business in this District and throughout the State of Texas.  Defendant may be served with process through its registered agent, CT Corporation System, 350 N. St. Paul St. Dallas, Texas 75201.

26.    Defendant    CHOICEPOINT    PUBLIC    RECORDS    DATABASE
TECHNOLOGIES, INC. is a Georgia corporation with its principal place of business in
Alpharetta, Georgia, and which, at all times material to this action, has been doing business in
this District and throughout the State of Texas. Defendant may be served with process through
its registered agent, Corporation Services Company, 701 Brazos, Suite 1050, Austin, Texas
78701.

27.    Defendant CHOICEPOINT PUBLIC RECORDS, INC. is a Georgia corporation
with its principal place of business in Alpharetta, Georgia, and which, at all times material to this
action, has been doing business in this District and throughout the State of Texas. Defendant
may be served with process through its registered agent, Corporation Services Company, 701
Brazos, Suite 1050 Austin, Texas 78701.

28.    Defendant CHOICEPOINT INC. is a Georgia corporation with its principal place
of business in Alpharetta, Georgia, and which, at all times material to this action, has been doing
business in this District and throughout the State of Texas. Defendant may be served with
process through its registered agent, Corporation Services Company, 701 Brazos, Suite 1050,
Austin, Texas 78701.

29.    Defendant CHOICEPOINT SERVICES, INC. is a Georgia corporation with its
principal place of business in Alpharetta, Georgia, and which, at all times material to this action,
has been doing business in this District and throughout the State of Texas. Defendant may be
served with process through its registered agent, Corporation Services Company, 701 Brazos,
Suite 1050, Austin, Texas 78701.

30.    Defendant SEISINT, INC. is a Florida corporation with its principal place of
business in Boca Raton, and which, at all times material to this action, has been doing business in

this District and throughout the State of Texas. Defendant may be served with process through its registered agent for service of process, Kenneth J. Schwartz, 6601 Park of Commerce Boulevard, Boca Raton, Florida 33487.

31.    Defendant LEXISNEXIS REED ELSEVIER, INC. is a Massachusetts corporation with its principal place of business in Newton, Massachusetts, and which, at all times material to this action, has been doing business in this District and throughout the State of Texas. Defendant may be served with process through its registered agent, Lexis Document Services Inc., 701 Brazos Street, Suite 1050, Austin, Texas 78701.

## II.

### JURISDICTION AND VENUE

32.    This action arises under a federal statute and this Court has jurisdiction pursuant to 18 U.S.C. §2724(a) (conferring jurisdiction on the United States District Court for actions under the DPPA) and 28 U.S.C. §1331 (federal question jurisdiction).

33.    Venue is appropriate in this District because certain Plaintiffs, as well as members of the proposed class, are residents of the District and Defendants have committed violations of the DPPA within the Eastern District of Texas.

## III.

### FACTS APPLICABLE TO ALL COUNTS

34.    The DPPA was included as part of omnibus crime legislation passed by Congress in 1993, known as the Violent Crime Control and Law Enforcement Act of 1993. Senator Barbara Boxer – (D-California), one of the DPPA's Senate sponsors, described several well-publicized incidents in which criminals had used publicly available motor vehicle records to identify and stalk their victims. Those incidents included:

COMPLAINT – CLASS ACTION                                                Page 12

a.      the murder of actress Rebecca Schaeffer in California by a man who had obtained
Schaeffer's address from California's Department of Motor Vehicles;

b.      home invasion robberies by a gang of Iowa teenagers who identified their victims
by copying the license numbers of expensive automobiles and used those license
numbers to obtain the addresses of the vehicle owners from the Iowa Department
of Transportation; and

c.      the Arizona murder of a woman whose home address was identified from the
Arizona Department of Motor Vehicles.

Senator Boxer also explained the ease with which a stalker had obtained the addresses of young

women by copying their license numbers and requesting their addresses from the California

Department of Motor Vehicles.

35.     As Senator Boxer explained, prior to the time of the passage of the DPPA, in "34

States, someone [could] walk into a State Motor Vehicle Department with your license plate

number and a few dollars and walk out with your name and home address."

36.     Representative Moran, who sponsored the DPPA in the House of Representatives,

explained that "very few Americans realize that by registering their car or obtaining a driver's

license through the DMV, they are surrendering their personal and private information to anyone

who wants to obtain it. When informed that such information can be so easily obtained, most

licensees are shocked and angry. According to a survey released by the National Association to

Protect Individual Rights, 92 percent of Americans believe that the DMV should not sell or

release personal data about them without their knowledge and approval."

37.     As originally enacted in 1993, the DPPA made it unlawful for any person or

organization to disclose or obtain personal information derived from any motor vehicle record,

unless the subject of the information had authorized such disclosure or the request/disclosure

qualified under a recognized exception, including use by any federal or state agency, use in

connection with motor vehicle and driver safety, use in court proceedings, use in certain research

activities, use relating to certain insurance matters, and use for verification of personal information submitted by the subject of such information. Use of personal information for marketing activities was permitted, so long as the States had provided individuals identified in motor vehicle records with the opportunity to prohibit such disclosures. This "opt out" provision effectively gave individuals the right to prohibit the States from disclosing personal information for marketing purposes. 18 U.S.C. §2721(1993).

38.    Congress significantly amended the DPPA in 1999 by eliminating the "opt out" provision for marketing activities. Use or obtaining of personal information contained in motor vehicle records for "surveys, marketing or solicitations" is permitted only "if the State has obtained the express consent of the person to whom such personal information pertains." Similarly, a requester of personal information may obtain such information for any purpose, "if the requester demonstrates if has obtained the express consent of the person to whom such personal information pertains." 18 U.S.C. §2721(b)(13), (14) (1999).  By changing the "opt out" exceptions of the 1993 DPPA to "opt in" exceptions in the 1999 DPPA, Congress significantly reduced the categories of persons whose personal information may be lawfully obtained under the Act. *See Reno v. Condon*, 120 S.Ct. 666, 669 (2000) (upholding the constitutionality of the DPPA) (States may no longer "imply consent from a driver's failure to take advantage of a state-afforded opportunity to block disclosure, but must rather obtain a driver's affirmative consent to disclose the driver's personal information" for restricted purposes.).  The effective date of the 1999 amendments to the DPPA was June 1, 2000.

39.    Texas law does not conform to the requirements of the 1999 amendments to the DPPA. Contrary to the DPPA's requirements that drivers "opt in" before the State can disclose

their personal information for marketing or solicitation, Texas has chosen not to implement such a procedure. Texas does not obtain express consent from any driver.

40.    Instead, the State of Texas only sells "personal information" from a motor vehicle record to "persons" who certify that they have a lawful purpose for the information and/or have obtained the specific written consent of the Texas driver  or identification card holder for the release of their information.

41.    Once a "person," as that term is defined by the DPPA, certifies to the State of Texas that they have a lawful purpose for *some* personal information and/or have obtained any requisite consent (and agrees to indemnify the State of Texas for any damages that State might incur by this procedure), the State of Texas, through its Department of Public Safety, provides that person with a copy of the State's *entire database* of names, addresses and other personal information – some twenty (20) million plus residents of the State of Texas

42.    Each Defendant in this litigation purchased this entire database of names from the Texas Department of Public Safety.  Defendants each have a signed contract with the State of Texas whereby they certify to the State of Texas that they have a proper purpose for obtaining each piece of personal information and/or have obtained requisite written consents.

43.    Although Defendants may have a permissible use under the DPPA for obtaining "personal information" for some of the people in the database, they do not have a permissible purpose to obtain all twenty million names in Texas' database.

44.    Under the DPPA, a "person" who knowingly obtains or discloses "personal information" concerning another from a "motor vehicle record ... shall be liable to the individual to whom the information pertains." 18 U.S.C. §2724(b). The DPPA provides for liquidated damages in the amount of $2,500.00 for each violation of the DPPA, in addition to punitive

damages upon a showing of a willful or reckless disregard of the law, reasonable attorney's fees and costs and other relief, including preliminary and equitable relief. 18 U.S.C. §2724(b). A "person" under the DPPA is defined as "an individual, organization or entity, but does not include a State or agency thereof." 18 U.S.C. §2721(2).

45.     As described above, after the effective date of the 1999 amendment to the DPPA (June 1, 2000), the Defendants unlawfully obtained "personal information" of individuals from the Texas "motor vehicle records" in violation of the DPPA.

46.     Defendants' violations of the DPPA have been committed "knowingly," within the meaning of the DPPA 18 U.S.C. §2724(b). In the context of the DPPA, to act knowingly is to act with knowledge of the facts that constitute the offense. *See, e.g., Bryan v. Unites States,* 524 U.S. 184, 193, 118 S.Ct. 1939, 1946, (1998) ("[U]nless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense."). Defendants, and each of them, knew that it obtained personal information pertaining to individuals from Texas motor vehicle records.

47.     The information obtained by the Defendants from "motor vehicle records" constitutes "personal information" within the meaning of the DPPA, 18 U.S.C. §2725(3). Defendants' obtaining and/or using such information is unauthorized by the DPPA and unlawful. Each record of personal information knowingly obtained from motor vehicle records is a separate and distinct violation of the DPPA, remediable under the DPPA, 18 U.S.C. §2724.

IV.

## CLASS ACTION ALLEGATIONS

48.     Pursuant to Fed. R. Civ. P. 23(b)(3), and 23(b)(2) Plaintiffs bring this action on behalf of themselves, and all others similarly situated, as representatives of the following class (the "Class"):

> Each and every individual in the State of Texas whose name, address, driver identification number, race, date of birth, sex and/or social security number are contained in motor vehicle records obtained by Defendants from the State of Texas's Department of Public Safety, without the express consent of such individuals, from June 1, 2000, through the date of judgment herein.
>
> Excluded from the class are persons who have expressly authorized the State of Texas's Department of Public of Public Safety to provide third parties with their "personal information" for any purpose and those persons whose information was obtained for a permissible purpose defined by the DPPA.

49.     The requirements of Fed. R. Civ. P. 23 are met in this case. The Class, as defined, is so numerous that joinder of all members is impracticable.

50.     There are questions of fact and law common to the Class as defined, which common questions predominate over any questions affecting only individual members. The common questions include:

  a.     whether Defendants obtained improperly and/or used "personal information" from the "motor vehicle records" of members of the Class, within the meaning of the DPPA, 18 U.S.C. §2725(3), (1); and

  b.     whether Defendants' obtaining and use of "personal information" from the "motor vehicle records" of members of the Class was done knowingly, within the meaning of the DPPA, 18 U.S.C. §2724(a).

51.     Plaintiff can and will fairly and adequately represent and protect the interests of the Class as defined and has no interests that conflict with the interests of the Class. This is so because:

a.   All of the questions of law and fact regarding the liability of the Defendants are common to the class and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs will necessarily establish the liability of the Defendants to all class members;

b.   Without the representation provided by Plaintiffs, it is unlikely that any class members would receive legal representation to obtain the remedies specified by the DPPA;

c.   A remedy available under the DPPA is the liquidated sum of $2,500, which Plaintiff intends to seek for all members of the Class; and

d.   Plaintiff has retained competent attorneys who are experienced in the conduct of class actions. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the class members and are determined to diligently discharge those duties to obtain the best possible recovery for the Class.

52.   All class members have the same legal rights under the DPPA. Defendants' violations of the DPPA have affected numerous Texas motor vehicle owners and lessees in a similar way. The class action is superior to any other method for remedying Defendants' violations of the DPPA given that common questions of fact and law predominate and the liquidated damage provisions of the DPPA make the remedy available to class members identical. Class treatment is likewise indicated to ensure optimal compensation for the Class and limiting the expense and judicial resources associated with thousands of potential claims.

53.   Defendants knowingly obtained "personal information," pertaining to Plaintiffs and the members of the Class from "motor vehicle records" maintained by the State of Texas DPS, in violation of the DPPA. 18 U.S.C. §2721 *et seq*. Defendants' obtaining and use of this "personal information" was not for a purpose authorized by the DPPA.

54.   Pursuant to the DPPA, 18 U.S.C. §2724(a), Defendants are liable for knowingly obtaining "personal information" pertaining to Plaintiffs and the members of the Class from "motor vehicle records," in violation of the DPPA.

COMPLAINT – CLASS ACTION                                                                                    Page 18

55.    Plaintiff and the members of the Class are entitled to liquidated damages in the amount of $2,500.00 for each instance in which the Defendants violated the DPPA.

WHEREFORE, Plaintiffs demand judgment on his behalf and on behalf of the other members of the Class to the following effect:

a.    declaring that this action may be maintained as a class action;

b.    granting judgment in favor of Plaintiffs and the other members of the Class against the Defendants in the amount of $2,500.00 for each instance in which the Defendants obtained or used personal information concerning the Plaintiff and members of the Class;

c.    punitive damages should be the Court find that the Defendants acted in willful or reckless disregard of the DPPA;

d.    requiring the Defendants to destroy any personal information illegally obtained from motor vehicle records; and

e.    such other relief as the Court deems appropriate.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

**THE COREA FIRM P.L.L.C.**


Thomas M. Corea
Texas Bar No. 24037906
Jeremy R. Wilson
Texas Bar No. 24037722
The Republic Center
325 North St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone:    214.953.3900
Facsimile:    214.953.3901

**OTSTOTT & JAMISON, P.C.**
George A. Otstott
Texas Bar No. 15342000
Ann Jamison
Texas Bar No. 00798278
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:    214.522.9999
Facsimile:    214.828.4388

**ATTORNEYS FOR PLAINTIFFS**