IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SHARON TAYLOR, et al., | § § § | CAUSE NO. 2:07-CV-00001 |
| Plaintiffs, | § § | CONSOLIDATED FROM |
| v. | § § | CAUSE NO. 2:07-cv-000017 |
| SAFEWAY, INC., et al. | § § § | |
| Defendants. | § § § | JUDGE: Donald D. Walter *By Assignment* |

**DEFENDANT AMERICAN STUDENT LIST, LLC'S SUPPLEMENT TO DEFENDANTS' CONSOLIDATED MOTION TO DISMISS ON COMMON ISSUES AND RESPONSE TO PLAINTIFFS' STATEMENT OF VIOLATIONS**

Defendant American Student List ("ASL") submits this Supplement to Defendants' Consolidated Motion to Dismiss on Common Issues and Response to Plaintiffs' Statement of Violations ("Consolidated Response"), urging the Court to dismiss the action against it (Taylor v. Safeway, Inc., Civ. Action No. 2:07cv0017). ASL hereby reasserts all of the points and arguments made in its Motion for Judgment on the Pleadings, filed February 19, 2008, and Defendants' Consolidated Response, filed April 18, 2008, and supplements as follows.

Despite the opportunity for discovery, Plaintiffs merely speculate that ASL violated the DPPA by obtaining motor vehicle records for an impermissible purpose and "continuing use" of those records for an unspecified impermissible purpose. Plaintiffs argue that ASL improperly obtained records because it did not use the records immediately and resold the data, but proffer no facts to support

their conclusory allegations. Moreover, they are wrong as a matter of law that the allegations support a claim under the DPPA. Though the Consolidated Response provides ample reasons for dismissal of Plaintiffs' suit, ASL supplements to address Plaintiffs' failure to base its case against ASL on the appropriate, pre-amendment version of the DPPA and their failure to satisfy threshold pleading standards with concrete factual allegations.

A.   **Plaintiffs Fail to State an Obtainment Claim Under the DPPA.**

Plaintiffs do not, and cannot, dispute that ASL last obtained motor vehicle records in March 2001 for the purpose of possible resale under a DPPA provision that permits uses for bulk marketing and solicitations. (Statement at 49; accord ASL's Am. Obj. and Response to Pls.' First Interrogatory at 2.) They argue, however, that ASL needed "the express consent of each person whose data was obtained for such purposes."[1] (Statement at 49.) Plaintiffs are just wrong that the DPPA required express consent in March 2001 when ASL obtained the records.

Before the 1999 amendment to the DPPA, the statute provided:

Personal information [from State motor vehicle records] . . . may be disclosed as follows:

. . .

(12)   For bulk distribution for surveys, marketing or solicitations if the motor vehicle department has implemented methods and procedures to ensure that --

   (A)   individuals are provided an opportunity, in a clear and conspicuous manner, to prohibit such uses; and

---

[1] The Consolidated Response separately addresses Plaintiffs' contentions regarding "immediately contemplated use" (Consol. Response at 11-15), and "[r]esale of data" (id. at 15-17). Plaintiffs' further insinuation that ASL acted improperly because it did not have a relationship with certain Plaintiffs is irrelevant because ASL had a permissible purpose for obtaining motor vehicle records independent of any relationship with Plaintiffs.

> (B) the information will be used, rented, or sold solely for bulk distribution for surveys, marketing, and solicitations, and that surveys, marketing, and solicitations will not be directed at those individuals who have requested in a timely fashion that they not be directed at them.

18 U.S.C. § 2721(b)(12) (as amended eff. October 11, 1996).

Thus, prior to the amendment, the DPPA provided that it was perfectly legal for direct marketers to obtain an individual's motor vehicle records as long as the individual had not affirmatively *opted out* by expressly prohibiting the disclosure. Id.; accord 140 Cong. Rec. H2522-23 (April 20, 1994) (Statement of Rep. Moran) ("Marketers use DMV lists to do targeted mailings and other types of marketing. This amendment will allow them to continue to do so, as long as they agree not to market drivers who object to their personal information being used for marketing purposes." (emphasis added)); 139 Cong. Rec. S15764 (Nov. 16, 1993) (Statement of Sen. Boxer) ("Currently, most States sell personal information to direct marketers. Our bill does not stop this. It simply says that if a State chooses to sell this information to marketers, they need to give people the opportunity to opt out and say no."); 139 Cong. Rec. S15764 (Nov. 16, 1993) (Statement of Sen. Warner) ("Mr. President, the legislation will also: . . . Provide access to this information for marketing purposes if the licensees have been given the opportunity to prohibit such disclosure."); 139 Cong. Rec. E2747-02 (Nov. 13, 1993) (Statement of Rep. Moran) ("States will still be allowed to sell personal information to direct marketers, as long as they have provided every driver with the opportunity to restrict such sales.").

The DPPA still permits direct marketers to obtain an individual's motor vehicle records, but only if the individual has *opted in* by expressly consenting to the disclosure. Plaintiffs mistakenly allege that the 1999 amendment was effective in Texas on June 1, 2000—the effective date in most states (see 2d Am. Compl. ¶ 75)—and attempt to apply the "express consent" requirement to records ASL obtained in March 2001. In fact, the amendment did not become law in Texas until on or about April 10, 2001. 18 U.S.C. § 2721 notes (providing that the 1999 amendment would be effective in Texas "within 90 days of the next convening of the State legislature").

Because ASL last obtained records before the effective date of the amendment, the proper inquiry is whether Plaintiffs opted out, not whether they opted in. No Plaintiff has alleged that he or she opted out. Moreover, because the State of Texas had an obligation to remove the records of all individuals who opted out before disclosing personal information to ASL, Plaintiffs cannot in good faith allege ASL obtained personal information regarding individuals who had opted out. As a matter of law, ASL was authorized to obtain the records it acquired at the time it did. Plaintiffs should not be permitted to keep ASL in this lawsuit when its activities prior to the effective date of the 1999 amendment were fully sanctioned by the DPPA.

---

The Texas legislature convened for its 77th Regular Session on January 9, 2001. See, e.g., Press Release, Senate of the State of Texas, Texas Senate Convenes for 77th Legislative Session, available at http://www.senate.state.tx.us/75r/Senate/Archives/Arch01/p010901a.htm. The Texas legislature enacted conforming legislation effective September 1, 2001. See Tex. H.B. 1544, 77th Leg., R.S. (2001).

B.   **Plaintiffs Fail to State a Use Claim Under the DPPA.**

Recognizing the fatal defect in their pleading, Plaintiffs speculate that ASL <u>used</u> personal information after the April 2001 effective date of the amendment. (Statement at 50.) These conclusory statements by Plaintiffs do not satisfy even the minimal standards of federal notice pleading. Moreover, Plaintiffs' "continuing use" allegation, asserted for the first time after well over a year of litigation, has never been the thrust of Plaintiffs' case, as pleaded in three separate complaints.

But in any event, Plaintiffs provide no factual allegations to support their claim of continuing use. Plaintiffs do not even allege that they received unwanted solicitations—a fact clearly within their direct knowledge. Clearly, if Plaintiffs cannot even allege that they received solicitations, there is no basis to hold ASL in this case to litigate over some wholly hypothetical improper use.

Relying only on an absence of facts, Plaintiffs state that "it is fair to conclude" that ASL continued to use data it obtained in March 2001. (<u>Id.</u>) This

---

Claims of "continuing use", premised on the *retroactive* application of the 1999 amendment to records obtained before the amendment, also would be legally insufficient. Although Congress changed the DPPA's permissible grounds for States to disclose motor vehicle records to direct marketers, it does not follow that Congress intended to restrict direct marketers' use of earlier obtained data. However, because the various legal issues regarding "continuous use" have never been in the case, nor briefed or argued, there is no basis for this Court to make any ruling regarding the validity of such claims at this time.

As explained in ASL's 12(c) motion, Plaintiffs failure to allege receipt of unwanted solicitations further supports dismissal on the separate ground that the DPPA requires an allegation of actual damages. (<u>Taylor v. Safeway</u>, 07-cv-17, Dkt. No. 158, at 6-9.) The Eleventh Circuit's contrary holding in <u>Kehoe v. Fidelity Federal Bank & Trust</u>, 421 F.3d 1209 (11th Cir. 2005), is not binding on this Court, and its reasoning is not persuasive. Congress did not intend to subject resellers like ASL to ruinous liability (potentially in excess of $50 billion for ASL alone) simply because an individual may have obtained unwanted junk mail. Cf. <u>Bolger v. Youngs Drug Prods. Corp.</u>, 463 U.S. 60, 72 (1983) ("[T]he short, though regular, journey from mail box to trash can . . . is an acceptable burden." (alteration in original)).

conclusory speculation clearly fails to satisfy the threshold pleading required under Fed. R. Civ. P. 8(a). Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007); Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

Plaintiffs' "continuing use" allegation is but a last ditch attempt to salvage their defective pleadings. There is no allegation in the original Complaint or Second Amended Complaint that ASL used personal information improperly—rather, Plaintiffs' case has always been predicated on the allegation that obtaining data in bulk violates the DPPA (a legally erroneous proposition). This Court should not allow Plaintiffs to avoid dismissal by raising newly minted arguments based on idle speculation rather than facts.

As a matter of law, at the time of ASL's last purchase, the DPPA permitted ASL to obtain for possible resale to direct marketers the records of individuals who had not expressly "opted out". ASL therefore did not violate the law, and the case pleaded against it should be dismissed.

WHEREFORE, ASL respectfully requests that the Court dismiss this case with prejudice.

        Respectfully submitted,

        /s/ Stephen S. Maris
        Stephen S. Maris
        Texas Bar No. 12986400
        E-mail: smaris@hunton.com
        Melissa J. Swindle
        Texas Bar No. 24013600
        E-mail: mswindle@hunton.com

        HUNTON & WILLIAMS LLP
        1445 Ross Avenue, Suite 3700
        Dallas, Texas 75202-2799
        Telephone: (214) 468-3300
        Facsimile: (214) 468-3599

        **ATTORNEYS FOR DEFENDANT**
        **AMERICAN STUDENT LIST, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record who have consented to electronic service through electronic notice provided by the United States District Court for the Eastern District of Texas under E.D. TEX. LOCAL COURT RULE 5(a)(3)(A) on this the 21st day of April 2008. All others were served via certified mail, return receipt requested.

        /s/ Stephen S. Maris
        Stephen S. Maris