IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

|  |  |
|---|---|
| SHARON TAYLOR, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ACXIOM., *et al.*, <br><br> Defendants. | CAUSE NOS. 2:07-cv-00001, 2:07-cv-00013, 2:07-cv-00014, 2:07-cv-00017, 2:07-cv-00018, 2:07-cv-00410 <br><br> JUDGE: DONALD WALTER <br><br> RESPONSE TO DEFENDANT GLOBE LIFE AND ACCIDENT INSURANCE COMPANY'S SUPPLEMENT TO MOTION TO DISMISS AND SUPPLEMENT TO CONSOLIDATED MOTION TO DISMISS ON COMMON ISSUES AND RESPONSE TO PLAINTIFFS' STATEMENT OF VIOLATIONS OF THE DRIVER PRIVACY PRTOTECTION ACT |

**RESPONSE TO DEFENDANT GLOBE LIFE AND ACCIDENT INSURANCE COMPANY'S SUPPLEMENT TO MOTION TO DISMISS AND SUPPLEMENT TO CONSOLIDATED MOTION TO DISMISS ON COMMON ISSUES AND RESPONSE TO PLAINTIFFS' STATEMENT OF VIOLATIONS OF THE DRIVER PRIVACY PRTOTECTION ACT**

Plaintiffs, By And Through Their Undersigned Counsel, Hereby File Their Response To Defendant Globe Life and Accident Insurance Company's Supplement To Motion To Dismiss And Supplement To Consolidated Motion To Dismiss On Common Issues And Response To Plaintiffs' Statement Of Violations Of The Driver Privacy Protection Act, and in Support Thereof,[1] State:

Defendant correctly notes that this claim turns on the effective date and interpretation of a key amendment of the DPPA promulgated by Congress in 1999. Prior to the 1999 Amendment, direct marketers were allowed to obtain *inter alia* an individual's social security number, address, name, driver's license number, and

---

[1] As with Defendants, Plaintiffs also rely on all arguments previously made in response to this Defendant's' previously filed Motions to Dismiss.

1

telephone number, for bulk distribution for surveys, marketing or solicitations, as long as the individual had not expressly opted to have their information removed from distribution.[2] Essentially, when it came to bulk distributions, the system was an opt-out system and presumably an entity could obtain the State's entire database, as long as the State offered citizens a "an opportunity, in a clear and conspicuous manner, to prohibit such uses."

However, in 1999, Congress determined that the walls of personal privacy were being pulverized by ever improving technology and the far more effective manner to protect Americans' personal information was to amend the DPPA to include an opt in system rather than the opt out requirement in place.[3] As of 1999, 18 U.S.C. § 2721(b)(12) read as follows:

> (B) for bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

This amendment substantially changed the privacy protection aura of the DPPA by placing into action a more stringent *opt in* requirement. The effective date of this amendment was June 1, 2000.[4]

Defendants are correct that Plaintiffs do not assert an improper obtainment claim against this Defendant. This Defendant's request to purchase the State's drivers' license database was accepted by the State of Texas on May 4, 2000. As noted above, the effective date of the amendment to the DPPA was June 1, 2000, as to this Defendant. It is clear that Texas has never obtained express consent from its citizens to allow

---

[2] *See* 18 U.S.C. § 2721
[3] 145 Cong. Rec. S14533-02 (1999) (statement of Sen. Safire).
[4] The Driver's Privacy Protection Act of 1994, Pub. L. No. 106-69, 113 Stat 986 (1999).

companies to use their "personal information"[5] Given the short time period involved, however, between this Defendants' purchase of this valuable database and the effective date of the amendments to the DPPA, Plaintiffs assert that it is reasonable to assume that this Defendant used that database after the effective date of the DPPA. Plaintiffs have presented the underlying facts supporting this assumption. Thus, Plaintiffs are asserting an improper use claim.

Defendant devotes a significant portion of its brief to the legal argument that once this database was obtained, they are somehow "grandfathered in" and were thus free to use the database for solicitation and marketing even though the State of Texas never implemented a procedure for obtaining any citizens' "express consent" as that term is used in the DPPA. This is an erroneous interpretation of the DPPA. Initially, it must be noted that the DPPA, by its express terms allows **both** improper obtainment claims as well as improper use claims. Section 2724 still prohibits an entity for using obtained data for an improper purpose. Just because an entity was justified in obtaining a "motor vehicle records", does not mean it is justified in using those records. Particularly here, where the statute was amended. After the amendment, it was only permissible for *this Defendant* to use the database "[f]or bulk distribution for surveys, marketing or solicitations *if the State has obtained the express consent of the person to whom such personal information pertains.*"[6] There is nothing in the DPPA which states that as long as "motor vehicle records" were obtained for a proper purpose, it may then be used for an improper purpose.

---

[5] Plaintiffs not only plead this fact in their Original Complaint, but the Contract entered between the State of Texas and numerous other Defendants clearly recognizes this fact. Furthermore, this Defendant does not in any way suggest that the State of Texas has ever obtained express consent from any of its citizens.

[6] 18 U.S.C. §2721(b)(12).

3

At the time Defendants likely used the database for solicitations and/or marketing, the DPPA prohibited such use because the State of Texas had never obtained express consent. Thus Defendant, after the effective date of the DPPA used this data "for a purpose not permitted under the DPPA."[7]

The remainder of the arguments presented by this Defendant are boilerplate in nature and have been fully addressed in Plaintiffs' Response to Defendants' Consolidated Motion to Dismiss on Common Issues. Plaintiffs hereby refer to that Response and all arguments contained therein. Just as is true for all Defendants, once Plaintiffs assert a cause of action under the DPPA there is no issue with their standing to redress this Defendant's violations of their legally protected interests.

For these reasons, as well as those previously presented to the Court in response to this Defendant's original Motion to Dismiss, Plaintiffs contend that this Defendant's Motion to Dismiss should be denied.

Respectfully submitted,

**THE COREA FIRM, P.L.L.C.**

/Jeremy R. Wilson/
Thomas M. Corea
Texas Bar No. 24037906
Jeremy R. Wilson
Texas Bar No. 24037722
The Republic Center
325 North St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone:   (214)953-3900
Facsimile:    (214)953-3901

---

[7] *See* 18 U.S.C. §2724.

4

**OTSTOTT & JAMISON, P.C.**
George A. Otstott
Texas Bar No. 15342000
Ann Jamison
Texas Bar No. 00798278
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:  (214)522-9999
Facsimile:  (214)828-4388

**THE MANN FIRM**
James Mark Mann
Texas Bar No. 12926150
300 W. Main
Henderson, TX 75652
(903) 657-8540
Fax: (903) 657-6003

## CERTIFICATE OF SERVICE

I certify that on May 9th, 2008, I electronically filed the above Motion with the Clerk of the Court using CM/ECF and that the Motion has been forwarded by CM/ECF to all counsel of record.

/Jeremy R. Wilson/
Jeremy R. Wilson

5