IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

SHARON TAYLOR, *et al.*,

      Plaintiffs,

v.

BIOMETRIC ACCESS INC., *et al.*,

      Defendants.

§
§
§
§
§
§
§
§

CAUSE NO. 2:07-cv-00018-TJW

JUDGE:  T. JOHN WARD

**RESPONSE TO U.S. INTERACTIVE'S
MOTION TO DISMISS**

## RESPONSE TO U.S. INTERACTIVE'S MOTION TO DISMISS

    Plaintiffs, by and through their undersigned counsel, hereby file their Response to Motion to Dismiss, and in support thereof, state:

### I.

### PRELIMINARY STATEMENT

    This class action lawsuit involves numerous and substantial violations of the Driver's Privacy Protection Act of 1994 (DPPA or Act),[1] which regulates the disclosure of personal information contained in the records of state motor vehicle departments ("DMVs").[2] Defendants, desiring the benefits of using drivers' license records, chose to purchase the State's entire database of names and other personal information, containing personal information for over twenty million people. Some Defendants chose to purchase the entire database for convenience, likely determining that purchasing the database was less expensive than individually obtaining information pertaining to each person for whom that Defendant had a proper statutory purpose. Other Defendants are purely information brokers, selling information to others, yet having no valid, permissible purpose for obtaining any of the information in the database.  Either way,

---

[1] 18 U.S.C. §§ 2721-2725 (1994 ed. and Supp. IV).
[2] *Kehoe v. Fidelity Federal Bank & Trust,* 421 F.3d 1209 (11th Cir. 2005).

Dockets.Justia.com

Defendants are in direct violation of the DPPA and this lawsuit seeks redress for these clear statutory violations.

This action involves a number of Defendants who have each raised almost identical issues related to standing and whether Plaintiffs' First Amended Complaint states a cause of action. Pursuant to Local Rule CV-7, Plaintiffs' Response to these Motions is limited to fifteen (15) pages. Plaintiffs respectfully contend that these issues cannot be adequately addressed in individual responses so limited and that it is impracticable to seek permission to provide the Court with more lengthy individual responses. Thus, should the Court find it helpful to its determinations, Plaintiffs respectfully request that the Court, after the initial status conference, enter a briefing schedule on these global issues and allow both sides an opportunity to provide detailed briefing.

## II.

## ARGUMENTS AND AUTHORITIES

### A.   Background

The DPPA establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information. The DPPA generally prohibits any state DMV, or officer, employee, or contractor thereof, from "knowingly disclos[ing] or otherwise mak[ing] available to any person or entity personal information about any individual obtained by the department in connection with a motor vehicle record."[3] The Act, however, also regulates the conduct of private persons, making it unlawful for any "person" knowingly to obtain or disclose any record

---

[3] 18 U.S.C. § 2721(a).

for a use that is not permitted under its provisions, or to make a false representation in order to obtain personal information from a motor vehicle record.[4]

The DPPA defines "personal information" as any information "that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information," but not including "information on vehicular accidents, driving violations, and driver's status."[5] A "motor vehicle record" is defined as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles."[6]

The DPPA permits DMVs to disclose and private persons to obtain personal information from motor vehicle records for a limited number of specifically enumerated purposes.[7]

The DPPA establishes several penalties to be imposed on States and private actors that fail to comply with its requirements. Any person who knowingly violates the DPPA may be subject to a criminal fine.[8] Additionally, any "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, *for a purpose not permitted under this chapter* shall be liable to the individual to whom the information pertains, who may bring a civil

---

[4] §§ 2722(a) and (b).

[5] § 2725(3).

[6] § 2725(1).

[7] The Act allows for the disclosure of personal information in a number of specifically delineated circumstances. 18 U.S.C. § 2721(b). For example, such information may be disclosed for use by any government agency in carrying out its functions, id. § 2721(b)(1); in connection with car or driver safety, theft and other motor-vehicle related matters, id. § 2721(b)(2); for use in the normal course of business by a legitimate business in certain instances, id. § 2721(b)(3); for use in connection with any civil, criminal, administrative or arbitral proceedings in any Federal, State, or local court or agency or before any self-regulatory body, id. § 2721(b)(4); for use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals, id. § 2721(b)(5); for use by an insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting, id. § 2721(b)(6); for use in providing notice to owners of towed or impounded vehicles, id. § 2721(b)(7); for use by any licensed private investigative agency or licensed security service for any purpose permitted under the Act, id. § 2721(b)(8); for use by an employer or its agent or insurer to obtain or verify required information relating to a holder of a commercial driver's license, id. § 2721(b)(9); and for use in connection with the operation of private toll transportation facilities, id. § 2721(b)(10).

[8] §§ 2723(a), 2725(2).

---

action in a United States district court.[9]  The DPPA also regulates private individuals' sale or disclosure of the above information. The Act prohibits "authorized recipients" of personal DMV information from reselling or re-disclosing personal information for a use for which the state could not have disclosed it in the first place.[10]

Thus, a plain reading of the language of the DPPA makes it clear that the recipient of "personal information" must have obtained the information for some permissible use under the Act.  A requestor who has such a permissible use, or "authorized recipient" under the DPPA, must be the entity which will actually use the information and cannot rely on some other, third-party's use to justify obtaining protected "personal information." This interpretation is not only evident upon a plain reading of the Act, but has also been bolstered by both the United States Supreme Court as well as the Iowa Supreme Court.

In *Reno v. Condon*,[11] in the course of upholding the statute's validity, the Supreme Court, albeit in dictum, read the DPPA to "allow private persons who have obtained drivers' personal information for *one of the aforementioned permissible purposes* to further disclose that information for any one of those purposes."[12] The court said plainly that the initial purchase must be "for one of the [statute's] . . . permissible purposes. . . ."

This interpretation is also consistent with the statutory intent that the statute "imposed a gate keeping function on the state departments of motor vehicles."[13] As the Iowa Supreme Court noted in *Locate.Pius.Com. Inc. v. Iowa D.O.T,*:

> The language of the DPPA as a whole makes it plain that Congress. . . sought limited access to personal information in state motor vehicle records by both protecting citizens from the

---

[9] § 2724. (emphasis added)
[10] 18 U.S.C. § 2721(c)("authorized recipient of personal information (except a recipient under subsection (b)(11) or (12)) may resell or redisclose the information only for a use permitted under subsection (b)").18 U.S.C. § 2722(a).
[11] 528 U. S. 141 (2000).
[12] *Id.* at 146. (emphasis added).
[13] *Locate.Pius.Com. Inc. v. Iowa D.O.T,* 650 N.W.2d 609,616 (Iowa 2002).

improper use of such information, while allowing access for legitimate purposes or uses. At the same time, it imposed a gate keeping function on the state departments of motor vehicles to exercise discretion to disclose personal information when used for the purposes described in subsection (b). *We think this approach taken by Congress to the dissemination of personal information in motor vehicle records contemplates that the person or entity requesting disclosure of the personal information also be the person or entity that will use the information for the statutory purpose.* Thus, non-consensual disclosure of information is permitted only for approved uses, and disclosure is not permitted if the requester is not seeking to use the information for the statutory purpose.

The Iowa Supreme Court then held that a private reseller "must itself be an 'authorized user'" to be permitted access to DMV records.[14]  The Iowa Supreme Court's conclusion is bolstered by well-established rules of statutory construction – that the DPPA must be interpreted "as a symmetrical and coherent regulatory scheme,"[15] and "fit, if possible, all parts into an harmonious whole,"[16] and that the statute's words "must be read in their context and with a view to their place in the overall statutory scheme."[17] In other words, the Court "should not confine itself to examining a particular statutory provision in isolation. The meaning--or ambiguity--of certain words or phrases may only become evident when placed in context." [18]

Thus, as both the United States Supreme Court and the Iowa Supreme Court have recognized from a plain reading of the DPPA, one who obtains "personal information" must have a permissible purpose under the act when they obtain the information.  And that person must also be the actual entity for which that purpose applies – he or she cannot rely on the fact that another person or entity will use the information in a permissible way.

---

[14] *Id.*
[15] *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995).
[16] *FTC v. Ivandel Brothers, Inc.*, 359 U.S. 385, 389 (1959)
[17] *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989).
[18] *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000); Brown v. Gardner, 513 U.S. 115, 118 (1994) ("Ambiguity is a creature not of definitional possibilities but of statutory context").

In this lawsuit, each Plaintiff has alleged that he or she is "a resident of Texas and holder of a Texas driver's license, which constitutes a "motor vehicle operator's permit," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff is also the owner of an automobile registered in Texas, for which there is a "motor vehicle title" and "motor vehicle registration," referenced in the DPPA, 18 U.S.C. §2725(1). Plaintiff's Texas driver's license, motor vehicle title and motor vehicle registration all contain "personal information" concerning Plaintiff, within the meaning of the DPPA, 18 U.S.C. §2725(3). These records disclose, among other things, Plaintiff's name, address and race."[19]

Plaintiffs further state that "the State of Texas . . . sells 'personal information' from a motor vehicle record to 'persons' who certify that they have a lawful purpose for the information . . ."[20] "Once a 'person,' as that term is defined by the DPPA, certifies to the State of Texas that they have a lawful purpose for *some* personal information . . . (and agrees to indemnify the State of Texas for any damages that State might incur by this procedure), the State of Texas, through its Department of Public Safety, provides that person with a copy of the State's *entire database* of names, addresses and other personal information – some twenty (20) million plus residents of the State of Texas."[21]

Plaintiffs also allege that "[e]ach Defendant in this litigation purchased this entire database of names from the Texas Department of Public Safety,"[22] and that "Defendants . . . do not have a permissible purpose to obtain all twenty million names in Texas' database."[23] Plaintiffs allege that "Defendants knowingly obtained 'personal information,' pertaining to Plaintiffs and the members of the Class from "motor vehicle records" maintained by the State of

---

[19] *See* First Amended Complaint. This statement is contained in each paragraph specifically identifying each individual Plaintiff.
[20] *See* First Amended Complaint ¶67.
[21] *See* First Amended Complaint ¶68.
[22] *See* First Amended Complaint ¶69.
[23] *See* First Amended Complaint ¶70.

Texas DPS, in violation of the DPPA. 18 U.S.C. §2721 *et seq.*,"[24] that "Defendants' obtaining and use of this 'personal information' was not for a purpose authorized by the DPPA. . . ,"[25] and that Defendants are liable for knowingly obtaining 'personal information' pertaining to Plaintiffs and the members of the Class from "motor vehicle records," in violation of the DPPA."[26] Plaintiffs have also alleged their entitlement to liquidated damages and attorneys' fees under the DPPA.[27]

Despite the fact that Plaintiffs clearly delineate the facts and circumstances surrounding Defendants' obtainment of their "personal information" in violation of the DPPA, Defendants contend that Plaintiffs have failed to state a claim for relief and that they do not have standing to bring this lawsuit. Plaintiffs will now address each of those arguments.

**B.     Plaintiffs Have Standing To Assert This Lawsuit**

Defendant first argues that Plaintiffs lack standing to pursue this lawsuit because they do not allege any "actual injury" as a result of Defendants' actions. This argument, however, completely misses the mark. According the United States Supreme Court, injury can be found in the invasion of any interest that Congress has elevated to the status of an individual "legal right."[28] Thus, it is well-established that an actual or threatened injury sufficient to meet Article III case-or-controversy "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."[29] To some degree, Congress may define an injury, for case-or-controversy purposes, where one may not have existed under the common law.[30] In *Federal*

---

[24] *See* First Amended Complaint ¶80.
[25] *See* First Amended Complaint ¶80.
[26] *See* First Amended Complaint ¶81.
[27] *See* First Amended Complaint ¶82.
[28] *See Linda R.S. v. Richard D.* 410 U.S. 614, 617 n.3 (1973). ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.").
[29] *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citations and internal quotation marks omitted).
[30] *See Lujan*, 504 U.S. at 580 (Kennedy, J., concurring).

*Election Comm. v. Akins*,[31] for instance, the Supreme Court found that the Federal Election Campaign Act created a right to information and, consequently, found an injury sufficient for standing where the FEC allegedly failed to obtain and produce information in violation of the Act. The injury was to the right to obtain (via the FEC) financial information from a politically active private organization, a right solely secured by statute.[32]

Defendants cite *Lujan v. Defenders of Wildlife*[33] for the proposition that a plaintiff must demonstrate a concrete injury in order to demonstrate standing. Defendants, however, clearly misread *Lujan* to the extent they assert that violation of the DPPA does not confer standing. The Court in *Lujan* states that "the plaintiff must have suffered an "injury in fact"-*an invasion of a legally protected interest*."[34]  *Lujan* makes clear that the concern is with violation of a legally protected interest – that is the injury required.

Clearly Congress recognized and created a legally protected right to not have one's personal information obtained without the requisite permissible purpose. The violation of that right is the concrete injury necessary to confer standing.[35] Whether Plaintiffs seek actual damages in their Complaint is irrelevant. Plaintiffs have alleged that they are entitled to relief from this Court and are entitled to liquidated damages. The Eleventh Circuit Court of Appeals has unequivocally held that a plaintiff need not establish actual damages to be entitled to liquidated damages under the DPPA.[36]

---

[31] 524 U.S. 11, 20-22 (1998).
[32] *See id.*
[33] 504 U.S. 555, 560 (1992).
[34] *Id.* at 560 (emphasis added).
[35] *Parus v. Cator* 2005 WL 2240955, at 5 (W.D.Wis. 2005)("It is true that plaintiff has not alleged that he suffered injury as a result of defendant Kreitlow's obtaining his personal information. However, under the statute, improperly obtaining plaintiff's information was an injury. The Driver's Privacy Protection Act is designed to safeguard personal information. See, e.g., 139 Cong. Rec. S15765 (1993) ("Easy access to personal information makes every driver in this nation vulnerable and infringes on their right to privacy.") (statement of Sen. Robb). If defendant Kreitlow obtained plaintiff's information in violation of the law, then he infringed upon plaintiff's privacy.").
[36] *Kehoe v. Fidelity Federal Bank & Trust,* 421 F.3d 1209 (11th Cir. 2005).

Once this issue is resolved, it becomes clear that the other elements of standing are met. Certainly, the invasion of Plaintiff's legally protected interest was caused by Defendants' action – it was Defendant's actions that violated this interest. As to redressability, the DPPA clearly provides for a host of judicial remedies, including injunctive relief as well as liquidated damages.[37] Plaintiffs have plead that their "personal information" was obtained and that Defendant did not have a proper purpose for obtaining the information. Those factual allegations must be accepted as true.[38]

Defendant also cites *Russell v. Choicepoint,*[39] a district court opinion from Louisiana, for the proposition that Plaintiffs lack standing to pursue this lawsuit. This reliance is misplaced for at least two reasons. First, *Russell* predates the seminal appellate opinion to interpret the DPPA, *Kehoe v. Fidelity National Bank & Trust.*[40] In *Kehoe,* the Eleventh Circuit Court of Appeals held that a Plaintiff need not show actual damages to be entitled to liquidated damages under the Act.[41] This case clearly established the principle that Congress meant to create a statutorily protected legal interest in not having one's personal information obtained without a proper purpose under the act. Thus, mere obtainment of one's personal information without a proper purpose is sufficient to state a cause of action and confer standing. The Court's analysis in *Russell* appears to focus on the lack of an "injury in fact." *Kehoe* affirmatively states that the legally protected interest is in obtainment without a permissible purpose, and that no actual damages need to be demonstrated to recover under the act. As *Russell* fails to address this issue, it is not persuasive authority. The second reason that reliance is misplaced is that *Russell* placed

---

[37] 18 U.S.C. § 2721 ("The court may award . . . (1) actual damages, but not less than liquidated damages in the amount of $2,500; (2) punitive damages upon proof of willful or reckless disregard of the law; (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and (4) such other preliminary and equitable relief as the court determines to be appropriate.").
[38] Uncontroverted allegations of the complaint must be accepted as true. *Den Norske Stats Oljeselskap As,* 241 F.3d at 424.
[39] 302 F.Supp.2d 654 (E.D.La. 2004).
[40] 421 F.3d 1209 (11th Cir. 2005).
[41] *See id.*

an unjustified reliance on the fact that it saw no statutory violation. The Court in *Russell* states that because it did not believe that Defendants violated the act, the Plaintiffs were not injured and could not have standing. Thus, the Court in *Russell* improperly applied a motion to dismiss standard instead of a standing analysis.

Whether the facts asserted by Plaintiff are sufficient to state a cause of action – they are – will be addressed in the next section of this brief. There can be no doubt, however, after *Kehoe*, that a Plaintiff whose information is wrongfully obtained has standing to redress that violation of his or her legally protected interest in this Court. Plaintiffs have alleged that their information was obtained and used without the requisite statutory purpose. As is discussed below, this is sufficient to state a cause of action and clearly confers standing on Plaintiffs to redress that violation of their legally protected interest in this Court. As the violation of this legally protected interest has already occurred, this matter is ripe for the Court's consideration.

## C.   Plaintiffs State a Claim Upon Which Relief Can Be Granted

### 1.   General Standards

"A motion to dismiss under Rule 12(b)(6) 'is viewed with disfavor and is rarely granted.' The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. The district court may not dismiss a complaint under rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' This strict standard of review under rule 12(b)(6) has been summarized as follows: 'the question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.'"[42]

The Supreme Court has recently re-affirmed this liberal pleading standard: "no technical

---

[42] *Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir. 2000), citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

forms of pleadings or motions are required, and Rule 8 provides that 'all pleadings shall be so construed as to do substantial justice.' Given the Federal Rules' simplified standard for pleading, 'a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. . . ."[43]

## 2.   The Complaint Gives Adequate Notice to Provide a Defense

It is well-settled that, in a federal proceeding, the court must presume that the general allegations of the complaint encompass the specific facts necessary to support them.[44] In other words, the court must accept as true all factual allegations in the complaint and reasonable inferences drawn from them.[45] The court must presume that the general allegations of the complaint encompass the specific facts necessary to support them.[46] The court must resolve all ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff.[47]   A pleading need not specify in exact detail every possible theory of recovery-it must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.[48]

Under FED. R. CIV. P. 8, Plaintiffs are only required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."[49] The Fifth Circuit instructs that the:

> notice pleading requirements of FED. R. CIV. P. 8 and case law do not require an inordinate amount of detail or precision. . . . The function of a complaint is to give the defendant fair notice of the plaintiff's claim and the grounds upon which the plaintiff relies.

---

[43] *Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 998-99, 152 L. Ed.2d 1 (2002).

[44] *Steel v. Citizens for a Better Environment*, 523 U.S. 83, (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)); *Meadowbriar Home for Children v. G.B. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996)(citing *Lujan*, supra.).
[45] *Id.*
[46] *Steel v. Citizens for a Better Environment*, 523 U.S. 83, (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)); *Meadowbriar Home for Children v. G.B. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996) (citing *Lujan*, supra.)
[47] *Fernandez-Montes* v. *Allied Pilots Ass 'n,* 987 F.2d 278, 284 (5th Cir. 1993).
[48] *Swierkiewicz* v. *Sorema,* 122 S. Ct. 998, quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957); *Thrift v. Hubbard,* 44 F.3d 348, 356 (5th Cir. 1995).
[49] *Swierkiewicz v. Sorema,* 122 S.Ct. 998.

> [citation omitted] The 'form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim. [citations omitted].'[50]

Defendant fails to direct the Court to any authority that the DPPA alters this liberal pleading standard.

Under this liberal pleading standard, it is clear that Plaintiffs' Complaint adequately states their claim, in plain English language, including all specifics necessary to satisfy FED R. CIV. P. 8. Defendants' own Motion demonstrates that Plaintiffs' Complaint has provided Defendant with adequate notice of all elements of plaintiff's claim, in plain English language and in sufficient detail to allow Defendant to respond. Defendant's point-by-point detailing of what they need to know clearly demonstrates their understanding of the nature of the claims against them. Defendant's attempts to point out the deficiencies in Plaintiffs' pleading not only demonstrate their understanding of the claims against them, but also improperly attempt to require a level of specificity clearly not contemplated by the rules of civil procedure. As demonstrated below, Plaintiffs also adequately allege all necessary elements to state a cause of action under the DPPA.

### 3. Plaintiffs Allege a Cause of Action

Defendant argues that Plaintiffs' complaint does not assert a cause of action because, even though it may not have had a proper purpose for obtaining the relevant data, the ultimate user had a valid purpose.

---

[50] *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425,434 (5th Cir. 2000).

As discussed above, Plaintiffs allege that they are licensed drivers whose information is contained in the State's database. Plaintiffs allege that this entire database was obtained by Defendant and that Defendant did not have the requisite statutory purpose to obtain their information. This states a cause of action under the DPPA.

Defendant cites *Russell v. Choicepoint Servs. Inc.*[51] for the proposition that Plaintiffs do not state a cause of action unless they specifically allege the improper purpose for which Defendants obtained information from a motor vehicle records. Defendant's reliance on *Russell* is misplaced. First, *Russell* places a much greater pleading burden on Plaintiffs than that required under the rules and Supreme Court and Fifth Circuit precedence. Second, *Russell* is factually distinguishable. In *Russell,* the Court focused singularly on whether a Defendant may have violated the DPPA when it obtained drivers' license data solely for sale to a third-party. Although Plaintiffs also contend that *Russell* was wrongly decided on this specific issue, *Russell* provides no help to Defendant in this case as Defendants in *Russell* asserted that resale to others was a permissible purpose under the statute.

Here, Defendants make no allegation that anything in the language of the DPPA allows them to obtain every drivers' information simply to save money and time or for other business related factors not specifically enumerated under the act. At least in *Russell*, the defendants tried to make creative statutory construction arguments to demonstrate that their obtainment was for a permissible purpose. Here, Defendant does not even attempt to make such an assertion. Plaintiffs have alleged that Defendant obtained the State's entire database of names and, in doing so, did not have a proper purpose to obtain Plaintiffs' personal information. A natural corollary to Plaintiffs' allegation that Defendant impermissibly purchased the entire database is that they did so for convenience, to save money, or for other business reasons that are not enumerated in

---

[51]300 F. Supp.2d 450, 455 (E.D. La. 2003).

the DPPA. What Defendant fails to recognize in its Motion is the fact that the DPPA prohibits obtaining "personal information" for *any* purpose other than those delineated in the statute. It is clear from the facts alleged in Plaintiffs' First Amended Complaint that there are a host of reasons Defendant chose to obtain the State's entire database. Unfortunately for Defendant, none of these reasons are delineated in the DPPA as a proper purpose for obtaining the information. Defendant may have had a proper purpose for obtaining some of the names and other information in the State's database, but they did not have a proper purpose to obtain all of them, and did not have a proper purpose to obtain Plaintiffs information.

Defendant also points to the fact that State governments allow this type of disclosure. It should come as no surprise that State governments might enact regulations contrary to the DPPA. In fact, it was the State's behavior and economic incentives for selling drivers' data that the DPPA sought to curb.

Plaintiffs have alleged that Defendant knowingly obtained their "personal information" without a permissible purpose. Plaintiffs have alleged the lack of a permissible purpose. This is sufficient to state a cause of action under the DPPA.

4.    **Should the Court Determine That Facts Supporting an Allegation of an Improper Purpose is Required, Plaintiffs Should Be Allowed to Amend**

If a plaintiff fails to state a claim upon which relief can be granted, the plaintiff should be given every opportunity to amend its pleading to properly state a claim.[52] A denial of a right to amend is reviewed under an abuse of discretion standard, but there is a presumption to allow amendments.[53] A motion to amend should be denied only when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

_____

[52] See *Hitt v. City of Pasadena*, 561 F.2d 606, 608-9 (5th Cir. 1977); *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (2004).
[53] See *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 391 (5th Cir. 2005).

amendment, [and] futility of amendment."[54]  Here, the only deficiency asserted by Defendant is the failure to allege an improper use.  Plaintiffs contend that convenience and business necessity are not proper purposes under the DPPA for obtaining "personal information" from driving records.  To the extent that Defendant requests a more definite statement, it should be denied, as Defendant clearly has notice of the claims against it sufficient to form a defense.  Should the Court wish to have a more specific pleading, however, Plaintiffs should be allowed the opportunity to amend to cure this deficiency.

## III.

## CONCLUSION

Plaintiffs allege a cause of action under the DPPA and have provided Defendant with sufficient facts for ascertain the nature of the claims against it and to form a defense.  Congress has conferred standing on Plaintiffs to redress the invasion by Defendant of their statutorily created legal rights.  Thus, Plaintiffs have standing to pursue this action.  As the invasion has already occurred, this matter is ripe for adjudication by this Court.  For these reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion.

Respectfully submitted,

THE COREA FIRM, P.L.L.C.

Thomas M. Corea
Texas Bar No. 24037906
Jeremy R. Wilson
Texas Bar No. 24037722
The Republic Center

---

[54] See id.

325 North St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone:      (214)953-3900
Facsimile:      (214)953-3901

**OTSTOTT & JAMISON, P.C.**
George A. Otstott
Texas Bar No. 15342000
Ann Jamison
Texas Bar No. 00798278
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:      (214)522-9999
Facsimile:      (214)828-4388

**THE MANN FIRM**
James Mark Mann
Texas Bar No. 12926150
300 W. Main
Henderson, TX 75652
(903) 657-8540
Fax: (903) 657-6003

## CERTIFICATE OF SERVICE

I certify that on May 15th, 2007, I electronically filed the above Motion with the Clerk of the Court using CM/ECF and that the Motion has been forwarded by CM/ECF to all counsel of record.

Jeremy R. Wilson