The State of Texas
County of Travis

## AGREEMENT FOR PURCHASING DRIVER RECORD INFORMATION IN BULK

Parties. The agreement is made between the Texas Department of Public Safety, 5805 N. Lamar, Austin, Texas 78752, herein after DPS, and

Explore Information Services, LLC
_____
name
2945 Lone Oak Drive, Suite 150, Eagan, MN 55121
_____
address
herein after Purchaser.

WHEREAS, Texas law authorizes DPS to sell driver and related records individually and in bulk for specified permissible purposes; and

WHEREAS, state and federal law, including the federal Driver Privacy Protection Act of 1994 (PL 103-322; 18 USC § 2721 et seq.) and Texas' driver privacy protection legislation of 1995 (Tex. Trans. Code §730) extend privacy protection to personal information maintained in the files of the state motor vehicle agencies such as the Texas DPS; and

WHEREAS, the Driver Privacy Protection Act of 1994, as amended by PL 106-69 (18 USC §2721, as amended), presently prohibits state motor vehicle agencies from selling personal information in bulk for purposes of marketing, solicitations, and certain surveys unless a state has first obtained express consent from each individual about whom listed personal information pertains, and

WHEREAS, the Texas State Legislature has refrained from enacting any express consent system for use in Texas; and

WHEREAS, Texas law requires each prospective purchaser of records in bulk, before receiving any records, to execute a written purchase agreement or contract containing such safeguards as DPS considers necessary or reasonable to ensure that all information and records purchased are used only for permissible purposes and that the rights of the individuals and DPS are protected; and

WHEREAS, the Purchaser, desires to purchase driver or related records, including personal information, from DPS,

IT IS AGREED, THEREFORE, that DPS shall sell and deliver to the Purchaser the driver records, subject to the following terms and conditions:

1. Definitions
   a. "Driver record" means a record that pertains to a motor vehicle operator or driver license or permit, or identification document issued by DPS.
   b. "Personal information" means information that identifies a person, including the driver identification number, name, date of birth, and address.

2. Certification of Permissible Use(s).

The Purchaser, by signing this agreement, hereby certifies compliance with all current provisions of the federal Driver Privacy Protection Act of 1994, as amended by PL 106-69 (18 USC §2721 et seq.), with applicable Texas driver privacy protection legislation, and with all other state and federal laws applicable to this agreement. The Purchaser further certifies that his/her/its use of the record and information purchased under this contract is for the following permissible purpose(s) only and for no others:

1

Initial all that apply:

_____ 1. For use in connection with any matter of (a) motor vehicle or motor vehicle operator safety; (b) motor vehicle theft; (c) motor vehicle emissions; (d) motor vehicle product alterations, recalls, or advisories; (e) performance monitoring of motor vehicles or motor vehicle dealers by a motor vehicle manufacturer; or (f) removal of nonowner records from the original owner records of a motor vehicle manufacturer to carry out the purposes of the Automobile Information Disclosure Act, the Anti Car Theft Act of 1992, the Clean Air Act, and any other statute or regulation enacted or adopted under or in relation to a law included in the above.

_____ 2. For use by a government agency in carrying out its functions or a private entity acting on behalf of a government agency in carrying out its functions.

_____ 3. For use in connection with a matter of (a) motor vehicle or motor vehicle operator safety; (b) motor vehicle theft; (c) motor vehicle product alterations, recalls, or advisories; (d) performance monitoring of motor vehicles, motor vehicle parts, or motor vehicle dealers; (e) motor vehicle market research activities, including survey research; or (f) removal of nonowner records from the original owner records of motor vehicle manufacturers.

_____ 4. For use in the normal course of business by a legitimate business or an authorized agent of the business, but only to verify the accuracy of personal information submitted by the individual to the business or the authorized agent of the business and to obtain correct information if the submitted information is incorrect to prevent fraud by, pursuing a legal remedy against, or recovering on a debt or security interest against the individual.

_____ 5. For use in conjunction with a civil, criminal, administrative, or arbitral proceeding in any court or government agency or before any self regulatory body, including service of process, investigation in anticipation of litigation, execution or enforcement of a judgment or order, or under an order of any court.

_____ 6. For use in research or in producing statistical reports, but only if the personal information is not published, redisclosed, or used to contact any individual.

_✓_____ 7. For use by an insurer or insurance support organization, or by a self insured entity, or an authorized agent, of the entity, in connection with claims investigation activities, antifraud activities, rating or underwriting.

_____ 8. For use in providing notice to an owner of a towed or impounded vehicle.

_____ 9. For use by a licensed private investigator agency or licensed security service for a purpose permitted as stated on this page.

_____ 10. For use by an employer or an authorized agent or insurer of the employer to obtain or verify information relating to a holder of a commercial driver's license that is required under 49 U.S.C. Chapter 313.

_____ 11. For use in connection with the operation of a private toll transportation facility.

_____ 12. For use by a consumer-reporting agency as defined by the Fair Credit Reporting Act (15 U.S.C.§1681 et seq.) for a purpose permitted under the Act.

_____ 13. For any other purpose specifically authorized by law that relates to the operation of a motor vehicle or to public safety. Please provide statutory authority _____

_____

2

14. For use in the preventing, detecting, or protecting against identity theft or other acts of fraud. DPS prior to release of personal information may require additional information.

It is expressly understood that the Purchaser may sell or furnish personal information obtained under this agreement to third parties, subject to the limitations herein, but may not sell or furnish personal information for any purpose or use that is not permitted by federal or state law. The Purchaser understands that he/she/it may not furnish personal information purchased under this agreement to any third party unless the third party certifies that his/her/its intended use of the information is for a use permitted under this contract and state and federal law. In addition the Purchaser agrees to the statutory restrictions on selling and/or redisclosing the information obtained from DPS. The Purchaser shall not sell or redisclose the personal information in the identical or substantially identical format the information was disclosed to the Purchaser. The Purchaser further understands that violating this paragraph is grounds for immediate termination of this agreement under Paragraph 13.

3. Fees and Payments.

In consideration of receiving records and information purchased in bulk, the Purchaser agrees to pay to DPS the applicable statutory charge. At DPS request, the Purchaser shall pay to DPS, prior to transmittal of the records and information in bulk, a deposit in an amount determined by DPS to be the approximate charge and shall pay any balance due upon receipt of billing. If this method of payment is requested, DPS shall refund any overpayment, pursuant to state procedures, following delivery of the copies. If DPS does not request a deposit, the Purchaser shall remit payment immediately upon receipt of billing but shall not be considered in default for a period of thirty (30) days following receipt of billing. The Purchaser acknowledges and agrees that all postage and/or other shipping charges, as well as shipping media (e.g. magnetic tapes) shall be the Purchaser's responsibility and may be included in the billing.

4. Acknowledgement and Disclaimer.

The Purchaser acknowledges that DPS is furnishing records and information "as is" and it makes no representation or warranty as to the accuracy of any record or the information furnished. DPS expressly disclaims responsibility for any failure to deliver records or information in a timely manner, or at all, in the event of staff shortages, failures of appropriations, breakdowns of equipment, compliance with new or amended laws, acts of authority exercised by a public official, acts of God, or other circumstances which may delay or preclude furnishing records and information in a timely fashion. If records and information are not furnished and the Purchaser has remitted a deposit, DPS shall refund the deposit. DPS has no further responsibility or liability to the Purchaser with respect to undelivered records and information and has no liability or responsibility whatsoever for delayed records and information.

5. Consumer Protection.

The Purchaser agrees that the records and information furnished under this agreement shall not be used to engage in any method, act, or practice which is unfair or deceptive, nor shall they be used for marketing or solicitations, or surveys not authorized by law.

6. Access to Information in Bulk.

The Purchaser agrees that no member of the public or any person outside the direct employ or control of the Purchaser shall be allowed direct access to records and information through the Purchaser under this agreement for any reason other than the Purchaser's intended and legitimate use of the records and information.

3

7. Record Creation and Retention.

If the Purchaser resells or re-discloses any of the information or records purchased under this agreement to a third party, the Purchaser agrees to create records identifying each such person or entity who obtained personal information from the Purchaser and the legally permissible purpose for which the record or information was obtained. The Purchaser shall retain the records of identification and purpose for a period of not less than five (5) years following transfer of the information and or records to the third party.

8. Provide Copies of Records and Notification of Release.

If the Purchaser resells or re-discloses any of the information or records purchased under this agreement to a third party, the Purchaser shall provide copies of those records identifying each person or entity who obtained personal information from the Purchaser and the permissible purpose for which it was obtained to DPS upon request. The Purchaser understands that DPS may exercise its reserved right to insert control records into bulk records and information furnished, as an independent means of identifying any entities to whom the Purchaser may have improperly resold or re-disclosed records and information under this agreement or if any inappropriate use has occurred. The Purchaser shall bear the expense of providing the copies of such records to DPS including any postage and/or shipping charges. The Purchaser will notify DPS of any inadvertent or unauthorized release of the Driver Record Information obtained under this contract within two days of when the Purchaser knows or should have known of such unauthorized or inadvertent release.

9. Assignability.

The Purchaser may not assign, license, or transfer any of its rights, duties, and obligations under this agreement without the prior written consent of DPS.

10. Incorporation of Other Documents.

This agreement incorporates by reference the document entitled the Purchaser's Information Form Attachment A to the Agreement for Purchasing Driver Record Information in Bulk, which provides DPS additional information about the Purchaser. With the exception to Attachment A, this agreement embodies the entire agreement between the Purchaser and DPS with relation to the transaction contemplated hereby, and there have been and are no other covenants, agreements, representations, warranties or restrictions between the parties other than those specifically set forth in the agreement.

11. Effective Date and Renewal.

This contract shall automatically renew on a yearly basis. However, either party may terminate this agreement upon thirty days written notice to the other party. Notice should be given to the contact person designated in Paragraph 17 of this contract. Notice is effective upon receipt or three days after deposit in the U. S. mail, whichever occurs first.

12. Cancellation.

Either party may cancel this agreement for any reason by giving the other party written notice of cancellation at least thirty (30) days prior to cancellation. If a party elects to cancel this agreement, all unfilled obligations, including the obligation to pay for copies received, shall remain in force.

13. Termination.

DPS may terminate this agreement in writing at any time for any reason. Without limiting the foregoing, DPS may immediately terminate this agreement, without notice for any violation of the terms of this contract or for any violation of any state or federal law or regulation relating to the information provided by DPS under this agreement. This includes but is not limited to failure to remit charges due in a timely fashion or for inappropriate use of data, such as use for marketing or solicitations. The Purchaser

4

acknowledges that if this agreement is terminated for cause, DPS may refuse to provide records and information in bulk.

14. Change of Status.

The Purchaser may terminate this contract in writing at any time. This agreement will automatically terminate if the Purchaser ceases to conduct business, if the Purchaser substantially changes the nature of its business, if the Purchaser sells its business, if there is a significant change in the ownership of the Purchaser, if the Purchaser ceases to qualify for the information under the permissible use(s) certified in Paragraph 2, or if the Purchaser dies. The Purchaser, its successor in interest, or its personal representative will immediately notify DPS in writing of any change in status that would implicate this paragraph. If the contract is terminated under this paragraph, the Purchaser's successor in interest will be eligible to apply for and execute a new contract.

15. Amendments.

The Purchaser acknowledges that DPS may amend the terms and conditions of this agreement from time to time in order to accommodate changes in the records or information furnished under this agreement and for other reasons deemed appropriate by DPS. DPS agrees to notify the Purchaser in writing of the content of any amendment. The Purchaser can make no modification or amendment to this Agreement unless in writing and signed by both parties.

16. Indemnification.

The Purchaser agrees to indemnify and save harmless the State of Texas and DPS, and any of their officers, agents, or employees, with respect to any claim asserted against them under the federal Driver Privacy Protection Act of 1994, as amended (18 USC §2721 et seq.), Texas driver privacy protection legislation (Tex Trans Code §730, as amended), and other state or federal law pertaining to this agreement, for any act or omission attributable to the Purchaser, its officer, agents, and employees, and others who obtain information from the Purchaser.

17. Contact Information.

The following contact person is designated by the Purchaser to receive all correspondence regarding this agreement.

Name __John McGuire, Director of Government Affairs__
Address __2945 Lone Oak Drive, Suite 150__
City, State Zip Code __Eagan, MN  55121__
Telephone __(651) 681-4465__
Fax __(651) 681-4442__

All correspondence to DPS regarding this contract must be mailed to the following address:

Texas Department of Public Safety
Driver Record Bureau
P.O. Box 4087
Austin, Texas 78773-0360
(512) 424-2009

18. Governing Law and Jurisdiction.

This agreement shall be construed in accordance with the laws of the State of Texas. The Purchaser agrees that any dispute which arises under this agreement and cannot be amicably resolved by the parties shall be submitted to a court of competent jurisdiction in Travis County, Texas, to which jurisdiction the Purchaser hereby submits.

19. Signatory Authority.

The signatories hereby certify that they are authorized by their respective parties to execute this agreement as party representatives and to bind their respective principals hereto.

IN WITNESS WHEREOF the representatives of the parties have affixed their signatures on the dates as written below.

_____
PURCHASER

J. Philip Casey, General Manager
_____
NAME AND TITLE

January 16, 2003
_____
DATE

_____
DEPARTMENT OF PUBLIC SAFETY

Tom Haas, Chief of Finance
_____
NAME AND TITLE

2-13-03
_____
DATE

6

PURCHASERS INFORMATION FORM
ATTACHMENT A
AGREEMENT FOR PURCHASING DRIVER RECORD INFORMATION IN BULK

Name and Address of Company/Business/Entity

Explore Information Services, L.L.C.

2945 Lone Oak Drive, Suite 150

Eagan, MN 55121

DBA if applicable
N/A

Company/Business/Entity Telephone Number

(800) 531-9125

Nature of Company/Business/Entity's Business Activities

Insurance Support Organization providing reunderwriting services to personal lines automobile insurance companies.

Federal Tax Identification Number
81-0572768

Intended use of Information obtained from the Department of Public Safety Driver Records

To assist automobile insurance companies to identify undisclosed youthful drivers in their insureds" households.

I hereby certify that I am authorized to make the foregoing statements and that the statements are true to the best of my knowledge. I understand that if any of the statements are willfully false, I am subject to criminal and civil penalties as well as the termination of the agreement for the purchase of driver record information in bulk. I also agree to notify DPS if any information supplied on this form changes within 30 days from the date of such change.

J. Philip Casey
Name

General Manager
Title

Signature

January 16, 2003
Date