IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

SHARON TAYLOR, *et al.*,

    Plaintiffs,

v.

ACXIOM., *et al.*,

    Defendants.

§
§
§
§
§
§
§

CAUSE NOS. 2:07-cv-00001, 2:07-cv-00013, 2:07-cv-00014, 2:07-cv-00017, 2:07-cv-00018, 2:07-cv-00410

JUDGE:  DONALD WALTER

**RESPONSE TO DEFENDANT AMERICAN STUDENT LIST,LLC'S SUPPLEMENT TO CONSOLIDATED MOTION TO DISMISS ON COMMON ISSUES AND RESPONSE TO PLAINTIFFS' STATEMENT OF VIOLATIONS**

**RESPONSE TO DEFENDANT AMERICAN STUDENT LIST,LLC'S SUPPLEMENT TO CONSOLIDATED MOTION TO DISMISS ON COMMON ISSUES AND RESPONSE TO PLAINTIFFS' STATEMENT OF VIOLATIONS**

Plaintiffs, By And Through Their Undersigned Counsel, Hereby File Their Response To Defendant American Student List, LLC's Supplement To Consolidated Motion To Dismiss On Common Issues And Response To Plaintiffs' Statement Of Violations and in Support Thereof,[1] State:

Defendant correctly notes that this claim turns on the effective date and interpretation of a key amendment of the DPPA promulgated by Congress in 1999. Prior to the 1999 Amendment, direct marketers were allowed to obtain *inter alia* an individual's social security number, address, name, driver's license number, and telephone number, for bulk distribution for surveys, marketing or solicitations, as long as the individual had not expressly opted to have their information removed from

---

[1] As with Defendants, Plaintiffs also rely on all arguments previously made in response to this Defendant's' previously filed Motions to Dismiss.

1

Dockets.Justia.com

distribution.[2]  Essentially, when it came to bulk distributions, the system was an opt-out system and presumably an entity could obtain the State's entire database, as long as the State offered citizens a "an opportunity, in a clear and conspicuous manner, to prohibit such uses."

However, in 1999, Congress determined that the walls of personal privacy were being pulverized by ever improving technology and the far more effective manner to protect Americans' personal information was to amend the DPPA to include an opt in system rather than the opt out requirement in place.[3]  After the 1999 amendment, 18 U.S.C. § 2721(b)(12) read as follows:

> (B)    for bulk distribution for surveys, marketing or solicitations *if the State has obtained the express consent of the person to whom such personal information pertains* (emphasis added).

This amendment substantially changed the privacy protection aura of the DPPA by placing into action a more stringent *opt in* requirement.  The effective date of this amendment was June 1, 2000.[4]  The statute as amended provided several States including Texas, 90 days after the next convening of the State legislature to be in compliance with the new amendments.[5]  ASL asserts that because Texas had a "grace period" to comply with the DPPA, ASL was also afforded the same protection.

### A.  The "Grace Period" allocated for the State of Texas Applied Only to The State of Texas and Not Individual "Persons."

American Student List ("ASL") was subject to the 1999 amendment when it became effective on June 1, 2000; therefore, ASL violated the DPPA when it purchased motor vehicle records of individuals who had not expressly allowed for the distribution of

---

[2] *See* 18 U.S.C. § 2721
[3] 145 CONG. REC. S14533-02 (1999) (statement of Sen. Safire).
[4] The Driver's Privacy Protection Act of 1994, Pub. L. No. 106-69, 113 Stat 986 (1999).
[5] *Id.*

their personal information from the Texas Department of Motor Vehicles and subsequently resold that material without express consent from the Driver's Privacy Protection Act of 1994 (herein referred to as "DPPA").

Congress intended for the 1999 amendment of section (b)(12) to become effective on June 1, 2000 for *everyone*, excluding *only* those several states, which includes Texas.[6] "The DPPA's provisions do not apply solely to States. The Act also regulates the resale and redisclosure of drivers' personal information by private [companies] who have obtained that information from state DMV."[7] Essentially, "[t]he DPPA regulates the universe of entities that participate as suppliers to the market."[8]

ASL, as a private company, is subject to the requirements and penalties as any State supplier of motor vehicle records. The Act does not exclude ASL or any other private company from complying with the amendment on June 1, 2000.[9] The DPPA does not require States to police private individuals from their involvement with the information the DPPA seeks to protect. Therefore, once ASL purchased motor vehicle records in March of 2001, ASL violated 18 U.S.C. §2724 (which was not amended) by failing to have a proper purpose to obtain the records.[10]

ASL would have this Court believe that any marketer had the privilege to come into Texas and purchase motor vehicle records from the Texas DMV without the express consent of the individual after June 1, 2000. This explanation is unsubstantiated and

---

[6] *See* The Driver's Privacy Protection Act of 1994, Pub. L. No. 106-69, 113 Stat 986 (1999).
[7] *Reno v. Condon*, 528 U.S. 141, 146 (2000).
[8] *Id*. at 151.
[9] *See* 18 U.S.C. § 2721; *See also* The Driver's Privacy Protection Act of 1994, Pub. L. No. 106-69, 113 Stat 986 (1999).
[10] *Cf.* Defendant American Student List, LLC's Supplement To Defendants' Consolidated Motion to Dismiss on Common Issues and Response To Plaintiffs' Statement of Violations, pg. 4 (wherein ASL clearly informs the Court that as of June 1, 2000, marketers can only "obtain an individual's motor vehicle records, . . . only if the individual has *opted in* by expressly consenting to the disclosure").

leads to a conclusion, which does not fit within Congress' purpose for enacting the DPPA. If Congress intended to extend this grace period for "contractors" as well as the several States, Congress would have expressly granted that permission. The Act clearly regulates both State and private company interaction with motor vehicle records[11] of the citizens of Texas and when Congress decided to amend the Act, Congress clearly extended a grace period for the State of Texas and not for ASL.

**B.    ASL's Contention Would Lead to The Conclusion that Congress Intended For The DPPA to Assert Different Civil Liability for Different Actor's Depending on the State in Which the Company Purchases the Information.**

ASL's contention that the effective date for it was not until April 2001, naturally asserts that Congress' intention was to allow companies who are banned from purchasing driver's records in other states a chance to come into Texas and purchase information that is a clear violation of the 1999 amendment. This would essentially mean that under ASL's argument the DPPA had differing civil liabilities depending upon the State selling the information. Congress clearly did not intend for that outcome. The more logical explanation for the "grace period" allowed for States such as Texas was to allow time for the Texas Legislature to meet and amend their laws -- not to allow companies to obtain data in violation of the DPPA for another year.

**B.    The DPPA Prohibits Improper Uses of Data and the 1999 Amendment Did Not "Grandfather In" Prior Obtained Data.**

Even assuming that Defendant's purported effective date for the DPPA – April 10, 2001, is correct, Plaintiffs have still asserted an improper use claim. Defendant admits that it obtained the "motor vehicle records" in March of 2001. Given the short

---

[11] *See* 18 U.S.C. § 2721 ("A State department of motor vehicles, and any officer, employee, or *contractor* thereof, *shall not* knowingly disclose or otherwise make available to any person. . ."); *See also* 18 U.S.C. § 2723(a) ("A *person* who knowingly violates this chapter shall be fined under this title").

time period involved, however, between this Defendant's purchase of this valuable database and the effective date of the amendments to the DPPA (less than a month later), Plaintiffs assert that it is reasonable to assume that this Defendant used that database after the effective date of the DPPA.    Plaintiffs have presented the underlying facts supporting this assumption.  Thus, Plaintiffs are asserting an improper use claim.

Defendant devotes a significant portion of its brief to the legal argument that once this database was obtained, they are somehow "grandfathered in" and were thus free to use the database for solicitation and marketing even though the State of Texas never implemented a procedure for obtaining any citizens' "express consent" as that term is used in the DPPA.  This is an erroneous interpretation of the DPPA.  Initially, it must be noted that the DPPA, by its express terms allows *both* improper obtainment claims as well as improper use claims.  Section 2724 still prohibits an entity for using obtained data for an improper purpose.   Just because an entity was justified in obtaining a "motor vehicle records", does not mean it is justified in using those records.   Particularly here, where the statute was amended.  After the amendment, it was only permissible for *this Defendant* to *use* the database "[f]or bulk distribution for surveys, marketing or solicitations *if the State has obtained the express consent of the person to whom such personal information pertains.*"[12]  There is nothing in the DPPA which states that as long as "motor vehicle records" were obtained for a proper purpose, it may then be used for an improper purpose.

At the time Defendants likely used the database for solicitations and/or marketing, the DPPA prohibited such use because the State of Texas had never obtained express

---

[12] 18 U.S.C. §2721(b)(12).

consent. [13]   Thus Defendant, after the effective date of the DPPA used this data "for a purpose not permitted under the DPPA."[14]

The remainder of the arguments presented by this Defendant are boilerplate in nature and have been fully addressed in Plaintiffs' Response to Defendants' Consolidated Motion to Dismiss on Common Issues.   Plaintiffs hereby refer to that Response and all arguments contained therein.   Just as is true for all Defendants, once Plaintiffs assert a cause of action under the DPPA there is no issue with their standing to redress this Defendant's violations of their legally protected interests.

For these reasons, as well as those previously presented to the Court in response to this Defendant's original Motion to Dismiss, Plaintiffs contend that this Defendant's Motion to Dismiss should be denied.

It is clear that Texas has never obtained express consent from its citizens to allow companies to use their "personal information".[15]

---

[13] Plaintiffs not only plead this fact in their Original Complaint, but the Contract entered between the State of Texas and numerous other Defendants clearly recognizes this fact.  Furthermore, this Defendant does not in any way suggest that the State of Texas has ever obtained express consent from any of its citizens.

[14] *See* 18 U.S.C. §2724.

[15] Plaintiffs not only plead this fact in their Original Complaint, but the Contract entered between the State of Texas and numerous other Defendants clearly recognizes this fact.  Furthermore, this Defendant does not in any way suggest that the State of Texas has ever obtained express consent from any of its citizens.

Respectfully submitted,

**THE COREA FIRM, P.L.L.C.**


/Jeremy R. Wilson/
Thomas M. Corea
Texas Bar No. 24037906
Jeremy R. Wilson
Texas Bar No. 24037722
The Republic Center
325 North St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone:    (214)953-3900
Facsimile:    (214)953-3901

**OTSTOTT & JAMISON, P.C.**
George A. Otstott
Texas Bar No. 15342000
Ann Jamison
Texas Bar No. 00798278
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:    (214)522-9999
Facsimile:    (214)828-4388

**THE MANN FIRM**
James Mark Mann
Texas Bar No. 12926150
300 W. Main
Henderson, TX 75652
(903) 657-8540
Fax: (903) 657-6003

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 9, 2008, I electronically filed the above Motion with the Clerk of the Court using CM/ECF and that the Motion has been forwarded by CM/ECF to all counsel of record.

/Jeremy R. Wilson/
Jeremy R. Wilson

7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

SHARON TAYLOR, *et al.*,

      Plaintiffs,

v.

ACXIOM., *et al.*,

      Defendants.

§
§
§
§
§
§
§

CAUSE NOS. 2:07-cv-00001, 2:07-cv-00013, 2:07-cv-00014, 2:07-cv-00017, 2:07-cv-00018, 2:07-cv-00410

JUDGE:  DONALD WALTER

**RESPONSE TO DEFENDANT AMERICAN STUDENT LIST,LLC'S SUPPLEMENT TO CONSOLIDATED MOTION TO DISMISS ON COMMON ISSUES AND RESPONSE TO PLAINTIFFS' STATEMENT OF VIOLATIONS**

<u>**RESPONSE TO DEFENDANT AMERICAN STUDENT LIST,LLC'S SUPPLEMENT TO CONSOLIDATED MOTION TO DISMISS ON COMMON ISSUES AND RESPONSE TO PLAINTIFFS' STATEMENT OF VIOLATIONS**</u>

Plaintiffs, By And Through Their Undersigned Counsel, Hereby File Their Response To Defendant American Student List, LLC's Supplement To Consolidated Motion To Dismiss On Common Issues And Response To Plaintiffs' Statement Of Violations and in Support Thereof,[1] State:

Defendant correctly notes that this claim turns on the effective date and interpretation of a key amendment of the DPPA promulgated by Congress in 1999.  Prior to the 1999 Amendment, direct marketers were allowed to obtain *inter alia* an individual's social security number, address, name, driver's license number, and telephone number, for bulk distribution for surveys, marketing or solicitations, as long as the individual had not expressly opted to have their information removed from

---

[1]As with Defendants, Plaintiffs also rely on all arguments previously made in response to this Defendant's' previously filed Motions to Dismiss.

1

distribution.[2]  Essentially, when it came to bulk distributions, the system was an opt-out

system and presumably an entity could obtain the State's entire database, as long as the

State offered citizens a "an opportunity, in a clear and conspicuous manner, to prohibit

such uses."

However, in 1999, Congress determined that the walls of personal privacy were

being pulverized by ever improving technology and the far more effective manner to

protect Americans' personal information was to amend the DPPA to include an opt in

system rather than the opt out requirement in place.[3]  After the 1999 amendment, 18

U.S.C. § 2721(b)(12) read as follows:

> (B)    for bulk distribution for surveys, marketing or solicitations *if the State has
> obtained the express consent of the person to whom such personal
> information pertains* (emphasis added).

This amendment substantially changed the privacy protection aura of the DPPA by

placing into action a more stringent *opt in* requirement.   The effective date of this

amendment was June 1, 2000.[4] The statute as amended provided several States including

Texas, 90 days after the next convening of the State legislature to be in compliance with

the new amendments.[5]  ASL asserts that because Texas had a "grace period" to comply

with the DPPA, ASL was also afforded the same protection.

A. **The "Grace Period" allocated for the State of Texas Applied Only to The
State of Texas and Not Individual "Persons."**

American Student List ("ASL") was subject to the 1999 amendment when it

became effective on June 1, 2000; therefore, ASL violated the DPPA when it purchased

motor vehicle records of individuals who had not expressly allowed for the distribution of

---

[2] *See* 18 U.S.C. § 2721
[3] 145 CONG. REC. S14533-02 (1999) (statement of Sen. Safire).
[4] The Driver's Privacy Protection Act of 1994, Pub. L. No. 106-69, 113 Stat 986 (1999).
[5] *Id.*

2

their personal information from the Texas Department of Motor Vehicles and subsequently resold that material without express consent from the Driver's Privacy Protection Act of 1994 (herein referred to as "DPPA").

Congress intended for the 1999 amendment of section (b)(12) to become effective on June 1, 2000 for *everyone*, excluding *only* those several states, which includes Texas.[6] "The DPPA's provisions do not apply solely to States. The Act also regulates the resale and redisclosure of drivers' personal information by private [companies] who have obtained that information from state DMV."[7] Essentially, "[t]he DPPA regulates the universe of entities that participate as suppliers to the market."[8]

ASL, as a private company, is subject to the requirements and penalties as any State supplier of motor vehicle records. The Act does not exclude ASL or any other private company from complying with the amendment on June 1, 2000.[9] The DPPA does not require States to police private individuals from their involvement with the information the DPPA seeks to protect. Therefore, once ASL purchased motor vehicle records in March of 2001, ASL violated 18 U.S.C. §2724 (which was not amended) by failing to have a proper purpose to obtain the records.[10]

ASL would have this Court believe that any marketer had the privilege to come into Texas and purchase motor vehicle records from the Texas DMV without the express consent of the individual after June 1, 2000. This explanation is unsubstantiated and

---

[6] *See* The Driver's Privacy Protection Act of 1994, Pub. L. No. 106-69, 113 Stat 986 (1999).
[7] *Reno v. Condon*, 528 U.S. 141, 146 (2000).
[8] *Id.* at 151.
[9] *See* 18 U.S.C. § 2721; *See also* The Driver's Privacy Protection Act of 1994, Pub. L. No. 106-69, 113 Stat 986 (1999).
[10] *Cf.* Defendant American Student List, LLC's Supplement To Defendants' Consolidated Motion to Dismiss on Common Issues and Response To Plaintiffs' Statement of Violations, pg. 4 (wherein ASL clearly informs the Court that as of June 1, 2000, marketers can only "obtain an individual's motor vehicle records, . . . only if the individual has *opted in* by expressly consenting to the disclosure").

3

leads to a conclusion, which does not fit within Congress' purpose for enacting the DPPA.  If Congress intended to extend this grace period for "contractors" as well as the several States, Congress would have expressly granted that permission.  The Act clearly regulates both State and private company interaction with motor vehicle records[11] of the citizens of Texas and when Congress decided to amend the Act, Congress clearly extended a grace period for the State of Texas and not for ASL.

> **B.**    **ASL's Contention Would Lead to The Conclusion that Congress Intended For The DPPA to Assert Different Civil Liability for Different Actor's Depending on the State in Which the Company Purchases the Information.**

ASL's contention that the effective date for it was not until April 2001, naturally asserts that Congress' intention was to allow companies who are banned from purchasing driver's records in other states a chance to come into Texas and purchase information that is a clear violation of the 1999 amendment.  This would essentially mean that under ASL's argument the DPPA had differing civil liabilities depending upon the State selling the information.  Congress clearly did not intend for that outcome.  The more logical explanation for the "grace period" allowed for States such as Texas was to allow time for the Texas Legislature to meet and amend their laws -- not to allow companies to obtain data in violation of the DPPA for another year.

> **B. The DPPA Prohibits Improper Uses of Data and the 1999 Amendment Did Not "Grandfather In" Prior Obtained Data.**

Even assuming that Defendant's purported effective date for the DPPA – April 10, 2001, is correct, Plaintiffs have still asserted an improper use claim.  Defendant admits that it obtained the "motor vehicle records" in March of 2001.  Given the short

---

[11] *See* 18 U.S.C. § 2721 ("A State department of motor vehicles, and any officer, employee, or *contractor* thereof, *shall not* knowingly disclose or otherwise make available to any person. . ."); *See also* 18 U.S.C. § 2723(a) ("A *person* who knowingly violates this chapter shall be fined under this title").

4

time period involved, however, between this Defendant's purchase of this valuable database and the effective date of the amendments to the DPPA (less than a month later), Plaintiffs assert that it is reasonable to assume that this Defendant used that database after the effective date of the DPPA.   Plaintiffs have presented the underlying facts supporting this assumption.  Thus, Plaintiffs are asserting an improper use claim.

Defendant devotes a significant portion of its brief to the legal argument that once this database was obtained, they are somehow "grandfathered in" and were thus free to use the database for solicitation and marketing even though the State of Texas never implemented a procedure for obtaining any citizens' "express consent" as that term is used in the DPPA.  This is an erroneous interpretation of the DPPA.  Initially, it must be noted that the DPPA, by its express terms allows *both* improper obtainment claims as well as improper use claims.  Section 2724 still prohibits an entity for using obtained data for an improper purpose.  Just because an entity was justified in obtaining a "motor vehicle records", does not mean it is justified in using those records.  Particularly here, where the statute was amended.  After the amendment, it was only permissible for *this Defendant* to *use* the database "[f]or bulk distribution for surveys, marketing or solicitations *if the State has obtained the express consent of the person to whom such personal information pertains.*"[12]  There is nothing in the DPPA which states that as long as "motor vehicle records" were obtained for a proper purpose, it may then be used for an improper purpose.

At the time Defendants likely used the database for solicitations and/or marketing, the DPPA prohibited such use because the State of Texas had never obtained express

---

[12] 18 U.S.C. §2721(b)(12).

consent. [13]    Thus Defendant, after the effective date of the DPPA used this data "for a purpose not permitted under the DPPA."[14]

The remainder of the arguments presented by this Defendant are boilerplate in nature and have been fully addressed in Plaintiffs' Response to Defendants' Consolidated Motion to Dismiss on Common Issues.    Plaintiffs hereby refer to that Response and all arguments contained therein.  Just as is true for all Defendants, once Plaintiffs assert a cause of action under the DPPA there is no issue with their standing to redress this Defendant's violations of their legally protected interests.

For these reasons, as well as those previously presented to the Court in response to this Defendant's original Motion to Dismiss, Plaintiffs contend that this Defendant's Motion to Dismiss should be denied.

It is clear that Texas has never obtained express consent from its citizens to allow companies to use their "personal information".[15]

---

[13] Plaintiffs not only plead this fact in their Original Complaint, but the Contract entered between the State of Texas and numerous other Defendants clearly recognizes this fact.  Furthermore, this Defendant does not in any way suggest that the State of Texas has ever obtained express consent from any of its citizens.

[14] *See* 18 U.S.C. §2724.

[15] Plaintiffs not only plead this fact in their Original Complaint, but the Contract entered between the State of Texas and numerous other Defendants clearly recognizes this fact.  Furthermore, this Defendant does not in any way suggest that the State of Texas has ever obtained express consent from any of its citizens.

6

Respectfully submitted,

**THE COREA FIRM, P.L.L.C.**


/Jeremy R. Wilson/
Thomas M. Corea
Texas Bar No. 24037906
Jeremy R. Wilson
Texas Bar No. 24037722
The Republic Center
325 North St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone:    (214)953-3900
Facsimile:    (214)953-3901

**OTSTOTT & JAMISON, P.C.**
George A. Otstott
Texas Bar No. 15342000
Ann Jamison
Texas Bar No. 00798278
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:    (214)522-9999
Facsimile:    (214)828-4388

**THE MANN FIRM**
James Mark Mann
Texas Bar No. 12926150
300 W. Main
Henderson, TX 75652
(903) 657-8540
Fax: (903) 657-6003

## CERTIFICATE OF SERVICE

I certify that on May 9, 2008, I electronically filed the above Motion with the Clerk of the Court using CM/ECF and that the Motion has been forwarded by CM/ECF to all counsel of record.

/Jeremy R. Wilson/
Jeremy R. Wilson

7