IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SHARON TAYLOR, *et al.*, | § | CAUSE NOS. 2:07-cv-00001, 2:07-cv-00013, 2:07-cv-00014, 2:07-cv-00017, 2:07-cv-00018, 2:07-cv-00410 |
| Plaintiffs, | § § | |
| v. | § § | JUDGE: DONALD WALTER |
| | § | RESPONSE TO DEFENDANT US INTERACTIVE, INC.'S RESPONSE TO PLAINTIFFS' STATEMENT OF VIOLATIONS OF THE DRIVER'S PRIVACY PROTECTION ACT |
| ACXIOM., *et al.*, | § § | |
| Defendants. | | |

**RESPONSE TO DEFENDANT US INTERACTIVE, INC.'S RESPONSE TO PLAINTIFFS' STATEMENT OF VIOLATIONS OF THE DRIVER'S PRIVACY PROTECTION ACT**

Plaintiffs, By And Through Their Undersigned Counsel, Hereby File Their Response To Defendant US Interactive, Inc.'s Response To Plaintiffs' Statement Of Violations Of The Driver's Privacy Protection Act, and in Support Thereof,[1] State:

It appears this Defendant has raised many issues that were addressed in Plaintiffs Response to Defendants' Consolidated Motion to Dismiss on Common Issues. Plaintiffs rely on all of the arguments presented in that Response.

In addition, Plaintiffs will focus on a couple of individual issues that are unique to this Defendant. <u>First</u>, even a cursory glance at Defendant's arguments and it becomes clear that Defendant is misconstruing Plaintiffs' claims. These attempts to set up "strawman" arguments that are easier to tear down than Plaintiffs' actual contentions should be rejected. For instance, Defendant's first argument is that there is no requirement of a preexisting business relationship under the DPPA. Essentially,

---

[1] As with Defendants, Plaintiffs also rely on all arguments previously made in response to this Defendant's' previously filed Motions to Dismiss.

1

Defendant argues that there is no "blanket" requirement under the DPPA that businesses have a preexisting relationship with an individual before their data may be obtained. This argument misses the mark, however. Plaintiffs agree that not every obtainment of an individual's "motor vehicle records" requires a preexisting business relationship, particularly when it comes to uses such as "use by any licenses private investigative agency or licensed security service for any purpose permitted under this section." Of course, a private investigative agency need not necessarily have a preexisting relationship with the subject of its investigation, ***but it must have a current use for the data.***

Just like Defendant, a private investigative agency is not allowed to stockpile "motor vehicle records" even though it does not have a current use for the data, in case it should have a proper use for it later. Under Defendant's analysis, a private investigative agency can simply purchase states' entire databases, even though it has no use for any particular piece of data, simply because it might have some client in the future that has a use for the data. That is essentially Defendant's contention. Defendant provides online safety courses. It sells a service to customers. It uses "motor vehicle records" for persons who apply to take its course to verify that those individuals are who they claim to be. The fact is, however, that Defendant has no use for the vast majority of the millions of individual's "motor vehicle records" and the "personal information" it has obtained.

Plaintiffs asserted the lack of a preexisting relationship with this Defendant, to provide the factual basis for their conclusion that this Defendant did not have a proper purpose to obtain their "motor vehicle records," not to suggest that the DPPA always requires a preexisting relationship. The Plaintiffs recently identified have never taken one of Defendant's courses. Yet, Defendant contends that because they might in the

future, it is justified in obtaining their "motor vehicle records" now.

There are several problems with this proposition. Suppose Defendant is right that it can simply stockpile information by obtaining that data without a current use for the data. According to Defendant, this obtainment is for a proper purpose simply because it may use that data for a proper purpose at a latter time. Under that interpretation of the DPPA, an entity, such as a law firm, pursuant to the litigation exception, could purchase the State's entire database because, since it is in the business of representing clients in litigation, it could conceivably use the data for a later litigation. Unfortunately for Defendant, a district court has already looked at that situation and concluded that, in fact, the litigant must actually be able to specifically identify a pending or anticipated lawsuit.[2]

In *Pichler,* the Court was focusing on the language of 18 U.S.C. §2721(b)(4) which allows a person to obtain data for use in an "investigation in anticipation of litigation." The Court held that:

> "The second part of the litigation exception that deserves exposition is the phrase "investigation in anticipation of litigation." We understand the word "litigation" to encompass all manner of proceedings identified in § 2721(b)(4), including Board proceedings. ***More critically, however, for this portion of the litigation exception to apply, the Unions must prove that (1) they undertook an actual investigation; (2) at the time of the investigation, litigation appeared likely; and (3) the protected information obtained during the investigation would be of "use" in the litigation, as we interpreted that term above.*** This construction ensures that individuals' statutorily recognized rights to the privacy of their motor vehicle records ***are not sacrificed whenever a litigant raises the possibility of a tenuous connection between the protected***

---

[2] *Pichler v. UNITE* 339 F.Supp.2d 665, 668 (E.D.Pa. 2004)(holding that a union's obtainment of data for use in litigation required an actual litigation or an actual investigation in anticipation of a specifically identifiable litigation.). In *Pichler* the Defendant was not allowed to rely on the fact that it was often in litigation and therefore might likely need the information in the future for litigation purposes.

3

> *information and issues tangentially related to a conceivable litigation strategy.* [3]

The union defendant had argued earlier that the Court should "take judicial notice of the many NLRB proceedings involving their efforts to organize Cintas workers."[4] The Court rejected this analysis, instead holding that the union must be able to identify an actual investigation that they undertook in obtaining the plaintiffs "personal information." The Court thus rejected the notion that the defendants were permitted to obtain plaintiffs' "personal information" for use in a variety of National Labor Relations Board lawsuits, instead requiring that the union be able to identify a specific use for each piece of data it obtained. Thus, the *Pichler* Court's analysis is entirely consistent the analysis of the DPPA set forth in Plaintiffs' Response to Defendants' Consolidated Motion to Dismiss on Common Issues. The DPPA regulates individual "motor vehicle records" and imposes liability on anyone who obtains an individual's "personal information" with a current use that is permissible under the Act.

At the time Defendant purchased Plaintiffs' "motor vehicle records" it had no proper current use for the data, it was merely anticipating it may have a use in the future. In fact, in *Pichler*, the Defendant was attempting to assert a use that involved "anticipation of litigation," and the Court still held that the Defendant must be able to identify a specific litigation purpose that was identifiable a the time of obtainment. Here, the provisions permitting Defendant's asserted use of the information say nothing whatsoever about "anticipation of a customer providing information to verify" or "anticipation of use for matters of motor vehicle safety" The DPPA does not allow this

---

[3] *See id.*
[4] *See id.*

type of stockpiling of data. Defendant thus obtained Plaintiffs' personal information for a purpose not permitted by the DPPA, which is any purpose other than a current use for the data.

However, let us continue to assume that Defendant is correct that it can obtain "motor vehicle records" relating to persons for whom it does not have a current use. Defendants in their Consolidated Motion to Dismiss use the example of a tow trucker operator and the clear (to them at least) intent by Congress that a tow truck operator be allowed to obtain "motor vehicle records" for individuals whose information it has no current use. Defendant would apparently have no problem whatsoever with a tow truck operator obtaining the millions of individual "motor vehicle records" in the State of Texas's database, just in case it needs them in the future. In other words, a tow truck driver should be allowed to anticipate that it might have use for the information in the future. But what about a person who plans to purchase a tow truck in six months who wants to obtain the database now *in anticipation* of starting a tow truck business. Under Defendant's interpretation, as long as the tow truck operator simply sits on the data and uses it properly once it starts its tow truck business, there should be no problem with the tow truck operator obtaining data for a future anticipated use. Or what about this Defendant's example of a would be private investigator who plans to open shop in six months and wants to "hit the ground running." Can he or she simply obtain the State's entire database in anticipation that he or she will actually go into this particular business and will need the data when they do? We may all be yet surprised, but it is doubtful that Defendant would contend that this would be permissible under the express terms of the DPPA. Just as the future tow truck driver or the would-be private investigator cannot

5

anticipate their future use of the data in order to obtain it today, neither can Defendant.

Simply put, the permissible purposes allowed by the DPPA are the uses delineated in section 2721(b). A Defendant who obtains any individual's "motor vehicle record" without a corresponding, current use for that particular data violates the Act. The DPPA regulates individual pieces of "personal information" and nothing in the Act allows a Defendant to purchase data in bulk.

Although this issue has probably already been adequately addressed in the arguments above, it bears noting that this Defendant, more than in the Consolidated Motion to Dismiss, attempts to seize exclusively on the term "immediately contemplated use" which was used in Plaintiffs' Statement.[5] This language was actually one term in an entire paragraph devoted to setting out the improper purpose Defendant had for obtaining Plaintiffs "motor vehicle records"[6] In any event, the term, taken in context, clearly refers to the requirement that a Defendant have a current use for the "motor vehicle record" it obtains. Whether or not the Defendant actually proceeds to use the data for that purpose is irrelevant.[7] What is required is that the Defendant have a current use for the data when it obtains it.

---

[5] *See* document 62.

[6] Plaintiffs' actual assertion was that "Thus, this Defendant has violated the DPPA by at least the following ways: obtaining the above-referenced Plaintiffs' "personal information" for an impermissible purpose – to save itself time and/or money by not having to go back to the State of Texas each time it needs additional information, to avoid the inconvenience of having to go to the State each time it needs an additional customers' information (as many other entities do on a regular basis), and any other purposes adduced through further discovery in this case. Business necessity is not a proper purpose under the DPPA for obtaining data. Any purpose this Defendant had for obtaining the above-referenced Plaintiffs' "personal information" other than an immediately contemplated use of the information for one of the DPPA's authorized uses for the information constitutes a violation of the DPPA.

[7] Plaintiffs actually agree with Defendant that the current use a Defendant has when it obtains the data may not actually materialize or that a person may decide later not to use the "motor vehicle record" it obtained. The actual use (or non-use) to which the data is obtained is not relevant in an improper obtainment case. What is relevant is whether the person had a valid, current use for each individual "motor vehicle record" when it obtained them.

Thus, Defendant's argument that Plaintiffs claims "rest upon the notion that the Act imposes liability based upon an obtainment made for a permissible purpose, but also without an "immediately 'contemplated use' at the time of obtainment" is somewhat disingenuous. Plaintiffs' claim is that because Defendant did not have a current use for each individual "motor vehicle record" when it obtained the records, it obtained the records for a purpose not permitted under the Act – to stockpile the data in case it needs it in the future. As discussed above, Defendant claims that a proper purpose for obtaining motor vehicle records is "anticipation of use of the "motor vehicle" records for one of the permitted uses. The DPPA, however, never discussed anticipation of a use. It requires that the "motor vehicle records" be obtained *for use.* Even when the Act does allow obtainment for investigation *in anticipation* of litigation, that provision has been judicially interpreted to require an identifiable litigation, not simply that litigation may arise in the future and the obtainer wants to be ready when it does. Allowing such anticipated uses would lead to absurd results under the DPPA, as discussed above. If obtainment for anticipated uses is allowed by the language of the statute (they are not), there is absolutely no reason why a person could not simply claim that they anticipated getting into a particular business (such as towing or private investigation) and want "motor vehicle records" so that they can be ready.

But surely, Defendants will argue courts can craft some sort of additional requirement to the provisions of the DPPA to fix this hole in the language of the statute. What a court would really need to evaluate, however, is whether in fact, it was necessary for a particular defendant to obtain the entire database. Basically, this would require that the court involve itself in *ad hoc* determinations of how necessary it is for particular

defendants to obtain in this data in bulk. This type of judicial revision of the statute is unnecessary, however, when one looks at the statute as a whole and realizes that Congress has already made these determinations. And Congress has determined that obtainment in bulk based on future anticipated uses is not allowed. And even if the Court were going to make this type of individual, *ad hoc* analysis, it would be inappropriate to do so in response to a Motion to Dismiss. If Defendant wants to assert that it had a proper purpose for obtaining millions of "motor vehicle records" of non-customers in order to "verify their identity," it should allow discovery on that assertion and present it in the form of a summary judgment motion.

Defendant is essentially arguing that its business is just too important to be hampered in any significant way. However, that is exactly what the DPPA has attempted to do. Congress determined that this information is simply too readily available and that its wholesale distribution must be curtailed. That is why Congress only chose one form of bulk distribution for the states. Section 2721(b)(12) is the only provision of the DPPA which allows bulk distribution by the states, and only when the express consent of each individual has been obtained. That is clearly not the case here. Despite the creative statutory arguments Defendant attempts to make, the DPPA, by its express terms, simply does not allow Defendant's whole stockpiling of data in case it has a use for it in the future. For these reasons, Plaintiffs request that the Court deny Defendant's Motion to Dismiss.

The remaining arguments presented by this Defendant have been fully addressed in Plaintiffs' Response to Defendants' Consolidated Motion to Dismiss on Common Issues. Plaintiffs hereby refer to that Response and all arguments contained therein.

For these reasons, as well as those previously presented to the Court in response to this Defendant's original Motion to Dismiss, Plaintiffs contend that this Defendant's Motion to Dismiss should be denied.

Respectfully submitted,

**THE COREA FIRM, P.L.L.C.**

/Jeremy R. Wilson/
Thomas M. Corea
Texas Bar No. 24037906
Jeremy R. Wilson
Texas Bar No. 24037722
The Republic Center
325 North St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone:  (214)953-3900
Facsimile:  (214)953-3901

**OTSTOTT & JAMISON, P.C.**
George A. Otstott
Texas Bar No. 15342000
Ann Jamison
Texas Bar No. 00798278
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:  (214)522-9999
Facsimile:  (214)828-4388

**THE MANN FIRM**
James Mark Mann
Texas Bar No. 12926150
300 W. Main
Henderson, TX 75652
(903) 657-8540
Fax: (903) 657-6003

## CERTIFICATE OF SERVICE

I certify that on May 9, 2008, I electronically filed the above Motion with the Clerk of the Court using CM/ECF and that the Motion has been forwarded by CM/ECF to all counsel of record.

/s/ Jeremy R. Wilson
Jeremy R. Wilson