IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SHARON TAYLOR, *et al.*, | § | CAUSE NOS. 2:07-cv-00001, 2:07-cv-00013, 2:07-cv-00014, 2:07-cv-00017, 2:07-cv-00018, 2:07-cv-00410 |
| Plaintiffs, | § § | |
| v. | § § | JUDGE: DONALD WALTER |
| ACXIOM., *et al.*, | § § § | SUR-REPLY TO DEFENDANTS CONSOLIDATED MOTION TO DISMISS ON COMMON ISSUES |
| Defendants. | | |

### SUR-REPLY TO DEFENDANTS CONSOLIDATED MOTION TO DISMISS ON COMMON ISSUES

Plaintiffs, by and through their undersigned counsel, hereby file their Sur-Reply to Defendants' Consolidated Motion to Dismiss on Common Issues (doc. 72), and in support thereof, state:

In the second sentence of their reply argument, Convenience Purchasers state: "Plaintiffs argue that Defendants obtainment of the data in bulk for use for enumerated permissible purposes is impermissible because Defendants did not use the data immediately." This is a complete mischaracterization of Plaintiffs' argument. Each of the permissible purposes for obtaining individual's "motor vehicle records" are delineated in section 2721(b) of the DPPA. And each subsection of section 2721(b) allows data to be obtained *"for use."* It is clear from the express language of the DPPA that a person or business which obtains an individual's "motor vehicle records" must have a current use for that particular record and cannot stockpile records *in anticipation* that a *use* for the information will arise in the future.

1

Convenience Purchasers are correct that the DPPA does not require immediate use of data obtained from "motor vehicle records," and Plaintiffs have never argued that a purchaser must use a motor vehicle immediately.[1] This is a simply a "straw man" argument that Convenience Purchaser would rather address than addressing Plaintiffs' actual argument. A Defendant may have a current use for a particular "motor vehicle record," obtain the data for that use, and then decide not to use that record. In that situation, no liability would attach. The obtainment would have been for a current use, and thus for a purpose permitted under the DPPA, and the later non-use would not subject the obtainer to liability. What is not allowed, however, is for companies to stockpile data in anticipation that a later use will arise for that particular record.

At the time that Plaintiffs' "motor vehicle records" were obtained, Convenience Purchasers had no proper use to which to put the data. Plaintiffs' "motor vehicle records" were obtained in anticipation that a permissible use would arise in the future. Thus, the central allegation against Convenience Purchasers is that they obtained Plaintiffs data merely for convenience and to avoid the time and expense of later having to go back to the State of Texas and obtain other motor vehicle records once another motor vehicle is needed.

---

[1] Convenience Purchasers attempts to seize exclusively on the term "immediately contemplated use" which was used in Plaintiffs' Statement. This language was actually one term in an entire paragraph devoted to setting out the improper purpose Defendant had for obtaining Plaintiffs "motor vehicle records. Plaintiffs' actual assertion was that "Thus, this Defendant has violated the DPPA by at least the following ways: obtaining the above-referenced Plaintiffs' "personal information" for an impermissible purpose – to save itself time and/or money by not having to go back to the State of Texas each time it needs additional information, to avoid the inconvenience of having to go to the State each time it needs an additional customers' information (as many other entities do on a regular basis), and any other purposes adduced through further discovery in this case. Business necessity is not a proper purpose under the DPPA for obtaining data. Any purpose this Defendant had for obtaining the above-referenced Plaintiffs' "personal information" other than an immediately contemplated use of the information for one of the DPPA's authorized uses for the information constitutes a violation of the DPPA." In any event, the term, taken in context, clearly refers to the requirement that a Defendant have a current use for the "motor vehicle record" it obtains. Whether or not the Defendant actually proceeds to use the data for that purpose is irrelevant.

But, Convenience Purchasers argue, what is wrong with companies doing this? Did not Congress clearly intend for companies to be able to have as broad of access as they wanted to "motor vehicle records." After all, it is simply inconceivable that Congress would ever attempt to restrain business in any way. Therefore, Convenience Purchasers argue, we are not to look to the Act itself, but rather to the asserted goal of Congress to ensure that large companies have unfettered access to millions of individual's "motor vehicle records" whether they use one of them or millions of them.

Well, the first problem with this argument is the fact that the DPPA enumerates fourteen permissible purposes for obtaining "motor vehicle records," only one of which is even arguably related to anticipation of a future event.[2] And no Convenience Purchaser relies on that provision of the DPPA. Simply put, the DPPA does not contemplate stockpiling of data for anticipated uses in the future. Convenience Purchasers arguments that the express terms of the DPPA allow this type of stockpiling is simply unconvincing because their interpretation of the DPPA, not Plaintiffs, would lead to absurd results.

Suppose that Convenience Purchasers are correct that a person or business does not have to have a current use of a particular individual's "motor vehicle record" in order to obtain it. Suppose that a person or business need merely reasonably anticipate that a use will arise for any particular piece of data in the future. In their Consolidated Motion to Dismiss, Convenience Purchasers use the example of a tow trucker operator and the clear (to them at least) intent by Congress that a tow truck operator be allowed to obtain

---

[2] 18 U.S.C. § 2721(b)(4)(" For use in connection with . . . anticipation of litigation"). And, as discussed below, an entity obtaining pursuant to this exception must be able to specifically identify the litigation which is anticipated at the time the motor vehicle record is obtained. *See Pichler v. UNITE* 339 F.Supp.2d 665, 668 (E.D. Pa. 2004)(holding that a union's obtainment of data for use in litigation required an actual litigation or an actual investigation in anticipation of a specifically identifiable litigation.). In *Pichler* the Defendant was not allowed to rely on the fact that it was often in litigation and therefore might likely need the information in the future for litigation purposes.

3

"motor vehicle records" of individuals for which the tow truck operator has no current use. Convenience Purchasers would apparently have no problem whatsoever with a tow truck operator obtaining the millions of individual "motor vehicle records" in the State of Texas's database, even though it has no current use for any of the records so that the information will be readily at hand should it ever be actually needed.[3]

What about a person, however, who plans to purchase a tow truck in six months who wants to obtain the database now *in anticipation* of starting a tow truck business. Under Convenience Purchasers' interpretation, as long as the tow truck operator simply sits on the data and uses it properly once it starts its tow truck business, there should be no problem with the tow truck operator obtaining data for a future anticipated use. Under Convenience Purchasers' interpretation of the DPPA, the twenty million Texas drivers' license holders would have no cause of action under the DPPA against this future tow truck operator because he clearly obtained the data only for use in connection with his future tow truck operation, *i.e.* he was merely *anticipating* that a valid use of twenty million person's personal information would arise in the future.

And herein lies the problem with Convenience Purchasers' analysis. If Convenience Purchasers are allowed to obtain all twenty million individual's "motor vehicle records" in anticipation of using them in the future (even though it is inconceivable that any particular Convenience Purchaser will ever use more than a small fraction of the total data obtained), our future tow truck operator can clearly do the same thing. Clearly the DPPA does not contemplate this result. Yet, there is no logical way to

---

[3] Under Convenience Purchasers theory, all a would-be stalker or murder need do to obtain "personal information" on over twenty million people is buy a tow truck. Then he would be perfectly justified in obtaining the State's entire database of "motor vehicle records." But, of course, he could always be sued for civil liability after the murder if the stalker actually used the records to find his victim.

4

read the DPPA in such a way that allows what Convenience Purchasers are doing, yet prohibits the would be tow truck operator from obtaining the entire database as well.

Under Convenience Purchasers' analysis *any **individual*** who had a proper purpose for obtaining one "motor vehicle record" can claim that he or she obtained the entire database for the same purpose. Because, after all, if he or she needed one record for the asserted purpose, it is at least possible that person will need additional names in the future for that same purpose. Thus, the individual can anticipate future needs for additional names and be justified in obtaining the State's entire database of twenty million "motor vehicle records." For that matter, why would one even need to assert a current use for even one name. As with our future tow truck operator, any individual could simply claim that they anticipated that they would need motor vehicle records in the future and avoid any DPPA improper obtainment claim.

According to Convenience Purchasers, we do not look at whether a person or business actually had a use for each piece of data, we look at ***the subjective intent*** of the purchaser at the time the data was obtained. In evaluating this subjective intent, we must ascertain whether that person or business reasonably anticipated that a use for the data would arise in the future. This cannot have been the result Congress intended. In fact, this is not what the clear terms of the DPPA allow.

Another example also helps illustrate the infirmity of Defendants' position. Under Convenience Purchaser's interpretation of the DPPA, an entity, such as a law firm, pursuant to the anticipation of litigation exception, could purchase the State's entire database because, since it is in the business of representing clients in litigation, it could conceivably use the data for a later litigation. Unfortunately for Defendant, a district

5

court has already looked at that situation and concluded that, in fact, the litigant must actually be able to specifically identify a pending or anticipated lawsuit.[4]

In *Pichler*, the Court was focusing on the language of 18 U.S.C. §2721(b)(4), which allows a person to obtain data for use in an "investigation in anticipation of litigation." The Court held that:

> "The second part of the litigation exception that deserves exposition is the phrase "investigation in anticipation of litigation." We understand the word "litigation" to encompass all manner of proceedings identified in § 2721(b)(4), including Board proceedings. *More critically, however, for this portion of the litigation exception to apply, the Unions must prove that (1) they undertook an actual investigation; (2) at the time of the investigation, litigation appeared likely; and (3) the protected information obtained during the investigation would be of "use" in the litigation, as we interpreted that term above.* This construction ensures that individuals' statutorily recognized rights to the privacy of their motor vehicle records *are not sacrificed whenever a litigant raises the possibility of a tenuous connection between the protected information and issues tangentially related to a conceivable litigation strategy.*[5]

The union defendant had argued earlier that the Court should "take judicial notice of the many NLRB proceedings involving their efforts to organize Cintas workers."[6] The Court rejected this analysis, instead holding that the union must be able to identify an actual investigation that they undertook in obtaining the plaintiffs "personal information." The Court thus rejected the notion that the defendants were permitted to obtain plaintiffs' "personal information" for use in a variety of National Labor Relations Board lawsuits,

---

[4] *Pichler v. UNITE* 339 F.Supp.2d 665, 668 (E.D.Pa. 2004)(holding that a union's obtainment of data for use in litigation required an actual litigation or an actual investigation in anticipation of a specifically identifiable litigation.). In *Pichler* the Defendant was not allowed to rely on the fact that it was often in litigation and therefore might likely need the information in the future for litigation purposes.

[5] *See id.*
[6] *See id.*

instead requiring that the union be able to identify a specific use for each piece of data it obtained. Thus, the *Pichler* Court's analysis is entirely consistent the analysis of the DPPA set forth in Plaintiffs' Response to Defendants' Consolidated Motion to Dismiss on Common Issues. The DPPA regulates individual "motor vehicle records" and imposes liability on anyone who obtains an individual's "personal information" without a current use that is permissible under the Act.

Simply put, the permissible purposes allowed by the DPPA are the uses delineated in section 2721(b). The DPPA never discusses anticipation of a use. It requires that the "motor vehicle records" be obtained *for use.* Even when the Act does allow obtainment for investigation *in anticipation* of litigation, that provision has been judicially interpreted to require an identifiable litigation, not simply that litigation generally may arise in the future and the obtainer wants to be ready when it does.

The provisions relied upon by Convenience Purchasers' say nothing whatsoever about "anticipation of a customer providing information to verify" or "anticipation of use for matters of motor vehicle safety." And allowing such anticipated uses would lead to absurd results under the DPPA, as discussed above. If obtainment for anticipated uses is allowed by the language of the statute (they are not), then there is absolutely no reason why a person could not simply claim that they anticipated getting into a particular business (such as towing or private investigation) and want "motor vehicle records" so that they can be ready.

Convenience Purchasers are essentially arguing that their particular businesses are just too important to be hampered in any significant way and that Congress must not have intended this. Thus, they invite the court to involve itself in *ad hoc* determinations of how

necessary it is for particular defendants to obtain in this data in bulk. The type of judicial revision of the statute Convenience Purchasers interpretation would require are unnecessary, however, when one looks at the statute as a whole and realizes that Congress has already made these determinations. Congress determined that this information is simply too readily available and that its wholesale distribution must be curtailed.[7] Thus, Congress drafted the DPPA in such a way that obtainment in bulk based on future anticipated uses is not allowed. Despite the creative statutory arguments Defendant attempts to make, the DPPA, by its express terms, simply does not allow Defendant's whole stockpiling of data in case it has a use for it in the future. For these reasons, Plaintiffs request that the Court deny Defendant's Motion to Dismiss.

Defendants' citation of *Thomas v. George, Hartz, Lundeen, Folmer, Johnstone, King and Stevens, P.A.*[8] is not particularly shocking as it is one of a handful of United States Court of Appeals cases to analyze the DPPA, but Defendants completely misread this case. In *Thomas* the Eleventh Circuit simply stated that the DPPA does not shift the burden of demonstrating a permissible purpose for obtaining motor vehicle records to a defendant. But that holding is not really at issue in this case. And there was nothing

---

[7] Deborah F. Buckman, Annotation, *Validity, Construction, and Application of Federal Driver's Privacy Protection Act*, 18 U.S.C.A. §§ 2721 to 2725, 183 A.L.R. FED. 37 (2007)("Congress was also concerned about the common practice by many states of selling information in motor vehicle records to businesses, marketers, and individuals. Many state motor vehicle departments were in fact generating significant revenues by such sales.");145 CONG. REC. S11862-01 (1999) (statement of Sen. Shelby)("I believe that the general public would be as shocked as my colleagues in the Senate if they learned that States were running a business with the personal information from motor vehicle records.")("My concern is that private information is too available. The proliferation of information over the Internet makes it easy and cheap for almost anyone to access very personal information."); *Reno v. Condon*, 528 U.S. 141, 143 (2000) ("Congress found that many States, in turn, sell this personal information to individuals and businesses.") (citing 139 Cong. Rec. 29466, 29468, 29469 (1993); 140 Cong. Rec. 7929 (1994) (remarks of Rep. Goss)).("These sales generate significant revenues for the States." *Id.* (citing *Travis v. Reno*, 163 F.3d 1000, 1002 (C.A.7 1998) (noting that the Wisconsin Department of Transportation receives approximately $8 Million each year from the sale of motor vehicle information)).

[8] --- F.3d ---, 2008 WL 1821238 (11th Cir. Apr. 24, 2008).

8

particularly surprising about that holding by the Court. Plaintiffs have never argued that the DPPA shifts the burden to a defendant to come forward with a permissible purpose for obtaining Plaintiffs motor vehicle. Rather, Plaintiffs have been quite explicit from the beginning of this lawsuit by alleging that the Defendants did not have a proper purpose for obtaining Plaintiffs motor vehicle records and by alleging that stockpiling data by obtaining motor vehicle records without a current use for the data is an improper purpose for obtaining the data under the DPPA.

What Convenience Purchasers also fail to note, however, is that *Thomas* also recognized the importance of discovery in developing a DPPA claim. According to the Court in *Thomas*, there is no need to shift the burden to Defendants to assert a proper purpose for obtaining data, because "proper use of discovery tools, such as interrogatories, requests for admissions, and depositions, will reveal which enumerations may apply."

**Resale is not a permissible purpose for obtaining data**

Defendants reply brief does not really add anything new to the analysis of whether resale is proper purpose to obtain "motor vehicle records." Rather Defendants simply derogate Plaintiffs use of very persuasive *dicta* from a *per curiam* opinion of the Untied States Supreme Court by suggesting that this *dicta* was somehow a substitution for citation of an actual case. Plaintiffs would refer to the Court to the decision of the Iowa Supreme Court in *Locate.Plus.Com. Inc. v. Iowa D.O.T,*.[9] In *Locate.Plus.com*, the Iowa Supreme Court, after a detailed analysis of the terms of the DPPA, concluded that obtainment merely for the purpose of resale is forbidden by the DPPA. This opinion was

---

[9] 650 N.W.2d 609, 616 (Iowa 2002).

9

a unanimous opinion and affirmed the decision of the trial court in that case, as well as the decision of the Iowa Department of Transportation.

The term "authorized recipient" as used in section 2721(c) simply allows an entity who has obtained "motor vehicle records" for a proper use under the DPPA, to resell those records to someone else who also has a proper use for the records. Any other interpretation of this provision is strained and is inconsistent with the express language of the Act. Simply put, resale is not a proper purpose for obtaining "motor vehicle records" under the DPPA. Congress meant to impose a gate-keeping role on the States and limit their disclosure of protected data to those who would actually be using the data. Nothing in the DPPA allows an entity to obtain data for the sole purpose of resale.

Finally, Defendants' standing argument is completely without merit. *Russell v. Choicepoint* found standing to be absent **because it erroneously concluded that the DPPA had not been violated.** As discussed in Plaintiffs' Response, Congress has defined Plaintiffs' legally protected interests, and Plaintiffs have alleged that those protected interests have been violated by the obtainment of their motor vehicle records without a current permissible use. This states a cause of action and confers standing on Plaintiffs to redress those violations of their legally protected interests in a court of law.

Respectfully submitted,

**THE COREA FIRM, P.L.L.C.**


/s/ Jeremy R. Wilson
Thomas M. Corea
Texas Bar No. 24037906
Jeremy R. Wilson
Texas Bar No. 24037722
The Republic Center
325 North St. Paul Street, Suite 4150
Dallas, Texas 75201
Telephone:	(214)953-3900
Facsimile:	(214)953-3901

**OTSTOTT & JAMISON, P.C.**
George A. Otstott
Texas Bar No. 15342000
Ann Jamison
Texas Bar No. 00798278
Two Energy Square
4849 Greenville Avenue, Suite 1620
Dallas, Texas 75206
Telephone:	(214)522-9999
Facsimile:	(214)828-4388

**THE MANN FIRM**
James Mark Mann
Texas Bar No. 12926150
300 W. Main
Henderson, TX 75652
(903) 657-8540
Fax: (903) 657-6003

## CERTIFICATE OF SERVICE

I certify that on May 27th, 2008, I electronically filed the above Motion with the Clerk of the Court using CM/ECF and that the Motion has been forwarded by CM/ECF to all counsel of record.

/Jeremy R. Wilson/

Jeremy R. Wilson